**K & R ROBINSON ENTERPRISES LTD., Plaintiff,**

v.

**ASIAN EXPORT MATERIAL SUPPLY CO., INC., John S.C. Wong, and Sally B. Lim, Trustees of the M & M Wong Trust I, Defendants.**

Civ.A. No. 96–10899–RGS.

United States District Court, D. Massachusetts.

March 13, 1998.

## ORDER ON MAGISTRATE–JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

After consideration of the plaintiff's objections, I *ADOPT* the Report and Recommendation of Magistrate–Judge Karol. The Clerk will schedule a conference to discuss an expeditious resolution of all outstanding matters.

SO ORDERED.

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I AND COUNTERCLAIM (DOCKET NO. 23)

KAROL, United States Magistrate Judge.

The plaintiff, K & R Robinson Enterprises Ltd. ("K & R"), is a corporation organized under the laws of, and with a registered place of business in, the province of British Columbia, Canada. It is in the business of buying and selling scrap metal. In the summer of 1993 it sold several thousand tons of scrap metal to defendant Asian Export Material Supply Co., Inc. ("Asian Export"), a Massachusetts corporation. Late in 1993, after Asian Export had taken delivery of the scrap metal, K & R brought an action in British Columbia against Asian Export and its two principals, John S.C. Wong ("Wong") and Wong's wife, Sally B. Lim ("Sally"). K & R claimed 1) that Asian Export had not made full payment for the scrap metal and 2) that Wong, with Sally's assistance, had tortiously induced K & R to make delivery by falsely claiming that the proceeds of a certain letter of credit, which Asian Export had assigned to K & R as security, were sufficient to cover the full purchase price. K & R ultimately obtained default judgments in British Columbia against Asian Export, Wong, and Sally. It then commenced the present lawsuit against those same defendants seeking, among other things, to domesticate the default judgments under Mass.Gen.Laws ch. 235, § 23A. K & R has now moved for summary judgment to establish, *inter alia,* the validity and enforceability of those judgments under Massachusetts law. Because I conclude that factual disputes exist as to all

L. Richard LeClair, LeClair, Quinn, Scimone, Noonan & Connors PA, Waltham, MA, for Defendants.

John C. Ottenberg, Berry, Ottenberg & Dunkless, Boston, MA, for Plaintiffs.

defendants regarding the sufficiency of service of process and that, in any event, Sally is not amenable to process, I recommend that K & R's motion be **DENIED**.

## I. BACKGROUND AND UNDISPUTED FACTS

Based upon the memoranda and exhibits submitted by the parties, it appears, unless otherwise noted, that the following facts are undisputed.

In early 1993, an Asian Export employee named Lilly Lim ("Lilly"), from Massachusetts, called K & R in British Columbia to discuss the possible purchase of scrap metal. (Affidavit of John S.C. Wong ("Wong Aff.") ¶ 2, Ex. 9, Docket No. 32.) Lilly, also by telephone from Massachusetts, later conducted price negotiations on behalf of Asian Export with K & R's principal, Reg Robinson ("Robinson"). (*Id.* at ¶ 4.) At some point between May 30 and June 7, 1993, K & R and Asian Export entered into a written agreement for the sale of scrap metal by K & R to Asian Export. (Affidavit of Reg Robinson ("Robinson Aff."), Ex. A, Docket No. 7.)[1] The written agreement included a broad arbitration clause (Section 9.04) and a clause pursuant to which both parties "irrevocably attorn[ed] to the exclusive jurisdiction of the courts of British Columbia" (Section 10.02). The written agreement was orally amended after it was signed.[2] In August 1993, under Wong's supervision, the scrap was loaded onto ships in the waters off British Columbia and transported to China for resale by Asian Export to one of its customers.

In November 1993, K & R brought suit in the British Columbia Supreme Court against Asian Export for breach of contract. It also asserted claims against Wong and Sally individually for misrepresentation. An action in British Columbia is commenced by filing a document called a statement of claim (corresponding to the document we know as the complaint) and a writ of summons (corresponding to the document we know as the summons).[3] K & R's statement of claim alleged, *inter alia,* that 1) on June 30, 1993, K & R had entered into an agreement ("partly written and partly oral") with Asian Export, whereby K & R would sell to Asian Export and Asian Export would purchase from K & R approximately 10,000 metric tons of scrap metal at a price of $80 (U.S.) per ton; 2) under the agreement as originally written, Asian Export was to provide to K & R, as security for payment, an irrevocable letter of credit issued by a Canadian bank; 3) Wong later asked K & R to accept instead an assignment of an existing letter of credit in Asian Export's favor drawn on The Bank of China in New York City, New York; 4) to induce K & R to accept the substitute security, Wong fraudulently represented that the proceeds of the substitute letter of credit were sufficient to satisfy Asian Export's payment obligation in full, and that K & R's claim would have priority over claims by any other creditors of Asian Export against those proceeds; 5) to induce K & R to make delivery, Wong repeated those false representations to K & R while Robinson was in British Columbia in August 1993 to oversee the delivery of the scrap metal to Asian Export; 6) Sally knew that Wong had made false representations about the adequacy of the substitute security and of K & R's reliance thereon, but, in violation of her duty under British Columbia law to expose Wong's misrepresentations, she remained silent; 7) in reliance on Wong's representations and Sally's silence, K & R agreed to accept the substitute security and made delivery of the scrap metal to

---

1. The copy of the agreement included in the summary judgment record is undated, but the dates May 30, 1993 and June 7, 1993, apparently associated with facsimile transmission, appear on the signature page. Robinson filed an affidavit dated September 16, 1994, in the Supreme Court of British Columbia in which he stated that the agreement was executed on or about June 7, 1993. (Affidavit of Reg Robinson filed in the Supreme Court of British Columbia ¶ 2, attached as Ex. A to Ex. 6, Docket No. 32.) Wong concurs. (Wong Aff. ¶ 5, Ex. 9, Docket No. 32.)

2. Although this much is admitted, the parties sharply dispute the substance and scope of the changes.

3. K & R filed an "Amended Writ of Summons" on December 21, 1993, (*see* Amended Writ of Summons, Ex. C, Docket No. 8), but that amendment does not appear to have changed the substance of K & R's claims against Asian Export, Wong, or Sally.

Asian Export in the waters off British Columbia in August 1993; and 8) the proceeds of the substitute security were not sufficient to cover the full purchase price. K & R sought liquidated damages against Asian Export for breach of contract in the amount of $343,616.33 (Cdn.), or $367,140.73 (Cdn.) including freight, and damages in an unstated sum against Wong and Sally for intentional or negligent misrepresentation.

On December 9, 1993, counsel for K & R mailed a Notice of Request for Arbitration to Asian Export "pursuant to the agreement dated May 30, 1993." (Notice of Request for Arbitration, Ex. A, Docket No. 8.) By letter dated January 28, 1994, Asian Export, by its Massachusetts attorney, David Leland ("Leland"), declined to participate in the arbitration, stating that the contract containing the arbitration clause was rendered "null and void by the express term[s] of [a] second contract" between the parties, and, further, that the sale of scrap "took place totally within the terms of the second contract." (Letter from David Leland to Cecil Branson dated January 29, 1994, Ex. B, Docket No. 8.)

While the parties were exchanging correspondence about arbitration, events were also taking place on the litigation front in British Columbia. On or about December 28, 1993, Leland, on behalf of Asian Export, filed a pleading in the Supreme Court of British Columbia entitled "Application to Set Aside Service of Process" (the "Application").[4] (Affidavit of James A. Hall ("Hall Aff.") ¶ 8, Docket No. 8; Application, Ex. G, Docket No. 8.) Asian Export stated explicitly in the Application that it was making "no appearance in this case" and that the Application was being filed "for the sole and limited purpose of objecting to jurisdiction, contesting the procedure of the service of process, and objecting further that the litigation in this Court cannot be properly brought due to the Alternative Dispute Resolution procedures currently being prosecuted in this controversy." (Application ¶ 1, Ex. G, Docket No. 8.) On January 25, 1994,

or, three days before Asian Export declined K & R's invitation to participate in arbitration, Leland gave formal notice to K & R and the British Columbia Supreme Court that Asian Export was withdrawing its motion to set aside the service of writ of summons and would "make no appearance or entry into the court or into this action." (Hall Aff. ¶ 9, Docket No. 8; Notice of Withdrawal of Motion, Ex. H, Docket No. 8.) Both the Application and the notice of withdrawal contained the following identical legend:

THIS APPLICATION FOR ORDER TO SET ASIDE THE WRIT OF SUMMONS WITH STATEMENT OF CLAIM is made by David Charles Leland, Esq., (BBO# 547524). The business address location for service of process to ASIAN EXPORT MATERIAL SUPPLY CO. INC., is the Law Office of David Leland, 950 Boylston St., # 205, Newton, Ma 02161–1504 USA, tel. 617.630.0980, fax. 617.630.0979.

On January 26, 1994, Massachusetts Constable David H. Sullivan made return of service in which he stated that he had personally served in hand the amended writ of summons and statement of claim on Sally at her place of residence in Newton, Massachusetts on January 5, 1994. (Return of Service by David Sullivan, Ex. E, Docket No. 8.) Sally denies that she was served "as indicated in the Return of Service of David H. Sullivan dated January 26, 1994." (Supplemental Affidavit of Sally B. Lim ¶ 3, Docket No. 47.) Also on January 26, 1994, Massachusetts Constable Edward M. Gadowski made return of service in which he stated that he had served the amended writ of summons and statement of claim on Asian Export on January 6, 1994 "by giving in hand to Lilly Lim, agent in charge of business, authorized to accept service on behalf of [Asian Export]. Said service was made at 950 Boylston Street, Suite 204, Newton, MA." (Return of Service by Edward Gadowski, Ex. D, Docket No. 8.) Although it is undisputed that Lilly, while in Massachu-

---

4. The timing is curious, because there is no evidence, or at least there is none in the summary judgment record, that any process was served in the British Columbia action before January 5, 1994.

setts, communicated by telephone with K & R in 1993 to discuss the possible purchase of scrap and to negotiate price, there is no evidence in the summary judgment record (aside from Gadowski's representation) that Lilly was the agent in charge of the business of Asian Export or that she was authorized to accept service on its behalf.

On February 7, 1994, the British Columbia Supreme Court entered a default judgment against Asian Export in the amount of $343,616.33, plus interest, Asian Export "not having filed an Appearance to the Amended Writ of Summons in this action and the time for doing so having expired." (Hall Aff. ¶ 10, Docket No. 8; Default Judgment, Ex. I, Docket No. 8.) On that same date, the court also entered a default judgment against Sally, with damages to be assessed. (Certificate of Judgment ¶ 3, Ex. D, Docket No. 32.) These are the default judgments against Asian Exports and Sally which K & R seeks to enforce here. As of February 7, 1994, the only purported service that had been made on Sally was the disputed service by Constable Sullivan on January 5, 1994, and the only purported service that had been made on Asian Export was the service on Lilly by Constable Gadowski on January 6, 1994.

On February 9, 1994, K & R mailed Leland a Notice of Motion to advise him that K & R was seeking an order in the British Columbia Supreme Court authorizing it to make substituted service of process on Wong. (Second Affidavit of James A. Hall ("Second Hall Aff.") ¶ 2, Docket No. 24; Letter from Murray G. Madryga to David Leland dated February 9, 1994, Ex. B, Docket No. 24.) On February 14, 1994, no one having appeared on Wong's (or any other defendant's) behalf to contest the motion, an order issued which provided in pertinent part as follows:

(a) The Amended Writ of Summons and Statement of Claim [shall be] served upon the Defendant, John S.C. Wong, by leaving a copy of the Amended Writ of Summons and Statement of Claim filed herein with an adult person at 11–11 Suban Place, Newton, Massachusetts, and sent by regular mail to the office of David Leland, attorney, of Newton, Massachusetts, United States of America.

(b) The time limited for the entry of an Appearance by or on behalf of the Defendant, John S.C. Wong be 40 days from the date of service as provided herein.

(Second Hall Aff. ¶ 1, Docket No. 24; Order of British Columbia Supreme Court dated February 14, 1994, Ex. A, Docket No. 24.) On March 1, 1994, K & R sent Leland a letter "enclos[ing] for service upon you an Amended Writ of Summon [sic] with Statement of Claim, together with the Order of [the British Columbia Supreme Court] regarding same." (Second Hall Aff. ¶ 3, Docket No. 24; Letter from Murray G. Madryga to David Leland dated March 1, 1994, Ex. C, Docket No. 24.) One week later, on March 8, 1994, Constable William G. Joyce made return of service in which he stated that he had made service that day on Wong "by giving to an adult person: Sally Lim who agreed to accept service on behalf of John S.C. Wong ... said service was made at 11–11 Suban Place, Newton, MA." (Return of Service by William G. Joyce, Ex. F, Docket No. 8.) Sally denies being served "with ... any ... documents for the action filed in British Columbia, Canada for John Wong as indicated in the Return of Service of William G. Joyce dated March 8, 1994." (Supplemental Affidavit of Sally B. Lim ¶ 4, Docket No. 47.) On April 22, 1994, the court entered a default judgment against Wong, with damages to be assessed. (Certificate of Judgment ¶ 4, Ex. D, Docket No. 32.)

On March 2, 1995, the British Columbia Supreme Court assessed damages against Wong and Sally in the amount of $336,638.33 (Cdn.), plus pre-judgment interest in the amount of $20,802.41 (Cdn.). (Hall Aff. ¶ 13, Docket No. 8; Order of British Columbia Supreme Court dated March 24, 1995, Ex. J, Docket No. 8.) K & R contends it gave advance notice to Wong and Sally of the damage assessment hearing by sending a copy of its Notice of Motion to Leland (who never claimed to represent Wong or Sally individually). (Affidavit of Heather E. Maconachie ¶ 2, Docket No. 39.) Leland, who might have relocated to California by the time the Notice of Motion was sent to him, denies that he received it. (Affidavit of David Leland ¶¶ 4, 5, Ex. 11, Docket No. 32.)

On May 3, 1996, K & R filed a three-count complaint in this court against Asian Export, Wong, and Sally. Count I seeks to domesticate the British Columbia default judgments pursuant to Mass.Gen.Laws ch. 235, § 23A. Counts II and III, respectively, seek to set aside fraudulent conveyances and to have a receiver appointed. On June 6, 1996, Asian Export alleged in a counterclaim that K & R was in breach of the contract with respect to the same transaction that was the subject of K & R's complaint. K & R has now moved for summary judgment with respect to Count I of its complaint. Relying on the same default judgments, K & R also seeks summary judgment on Asian Export's counterclaim, on the ground that it is barred by res judicata.

Other facts relevant to the pending motion, both disputed and undisputed, will be discussed below in the context of the issue to which they relate.

## II. *APPLICABLE LEGAL PRINCIPLES*

Although the defendants raise a host of arguments in opposition to K & R's motion for summary judgment, we need not go beyond the subject of service of process to see that factual issues exist which preclude the granting of K & R's motion for summary judgment. Since the parties devote so much of their attention to personal jurisdiction, however, I shall discuss that subject as well.[5] To put the discussion and analysis into context, I shall first state some legal principles on which there appears to be no material disagreement.

1. A party may be granted summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the nonmovant's case, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983).

2. A foreign judgment for a sum of money is "conclusive between the parties" and "enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit" if it meets certain criteria set forth in the Uniform Foreign Money–Judgments Recognition Act, as enacted and codified in Massachusetts as Mass.Gen.Laws ch. 235, § 23A ("Section 23A").

3. Among the criteria that a foreign money judgment must satisfy to be conclusive and enforceable under Section 23A is the requirement that it be "enforceable where rendered." In British Columbia, as in the United States, *see Omni Capital International v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987), a default judgment for failure to appear is unenforceable if the defendant was not served with a summons. (*See* Rule 11(1) of the British Columbia Supreme Court Rules, attached as Ex. 8 to Docket No. 32 ("Service of a writ of summons is required unless the defendant enters an appearance.").)[6] Under British Columbia law, the summons may be served outside British Columbia "in a manner provided … for service

---

5. If the district judge, on a motion for reconsideration, rejects this report and recommendation, I am of course prepared to state and explain on remand my recommendation regarding all the many other issues that were briefed and argued, including: whether the default judgments are unenforceable as a result of fraud perpetrated by K & R on the British Columbia court; whether other improprieties in connection with the procedure by which damages were assessed preclude enforcement of the default judgments; the effect, if any, of the arbitration clause on the enforceability of the default judgments; whether enforcement of the default judgment against Sally would be repugnant to Massachusetts public policy; whether there is manifest error on the face of the default judgments that renders them unen-

forceable; whether British Columbia was a seriously inconvenient forum for defendants; and whether defendants' counterclaim is barred by the doctrine of res judicata, as applied in the courts of British Columbia, even assuming the default judgments are otherwise enforceable.

6. Under Federal Rule of Civil Procedure 44.1,

[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1.

in British Columbia" or "in a manner provided by the law of the place where service is made...." (*See* Rule 13(12) of the British Columbia Supreme Court Rules, attached as Ex. 8 to Docket No. 32.)

■ 4. As conceded by K & R at oral argument, (Tr. of Hearing held on April 17, 1997 at p. 10, line 24 to p. 11, line 15, Docket No. 50), under British Columbia law, service of process may not be made in a contract case on an agent of a principal located outside British Columbia except by leave of court, and, even then, a copy of the order authorizing service and of the writ of summons must be sent to the principal by registered mail. (*See* Rule 11(4) of the British Columbia Supreme Court Rules ("Where a contract has been entered into within the Province by or through an agent ... carrying on business within the Province on behalf of a principal residing out of the Province, by leave of the court given before the determination of the agent's authority or of the agent's business relations with the principal, a writ of summons ... in a proceeding relating to or arising out of the contract may be served on the agent, and a copy of the order giving leave and of the writ of summons ... shall be sent forthwith by registered mail to the principal at his address out of the Province."), attached as Ex. 8 to Docket No. 32.) [7]

7. The meaning of and relationship among Rules 11(2)(b), 11(4), and 13(1) of the British Columbia Supreme Court, as applied to the facts of this case, is unclear. Rule 11(2)(b) generally permits a corporation to be served by leaving a copy of the served document with any one of several designated officers or with an "agent of the corporation or of any branch or agency of the corporation in the Province," and it goes on to state that, "for the purpose of serving a document upon a corporation whose chief place of business is outside British Columbia, every person who, within the Province, transacts or carries on any of the business of ... that corporation shall be deemed its agent." Despite the apparent generality of Rule 11(2)(b), Rule 11(4), as noted, seems to impose a requirement that leave of court be obtained to serve an "agent" (but, apparently, not any of the officers specifically designated in Rule 11(2)(b)) in a case arising out of a contract "entered into within the Province by or through an agent ... carrying on business within the Province on behalf of a principal residing out of the Province." It is not entirely clear from the foregoing language whether, to be an "agent" for

■ 5. Under Massachusetts law a constable lacks authority to serve process in a matter in which the amount in dispute exceeds $2,500. *See* Mass.R.Civ.P. 4; Mass. Gen.Laws ch. 41, §§ 92, 94 (West 1994).

■ 6. A foreign judgment is not conclusive under Section 23A if "the foreign court did not have personal jurisdiction over the defendant," but a foreign judgment shall not be refused recognition for lack of personal jurisdiction if "the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." Mass.Gen.Laws ch. 235 § 23A (West 1986). Where the defendant challenges personal jurisdiction, the issue must be resolved through the application of ordinary principles of due process under American law, as those principles evolve. *See, e.g., Bank of Montreal v. Kough,* 612 F.2d 467, 471 (9th Cir.1980).

Other relevant legal principles are disputed and will be considered below in the context of the issue to which they relate.

### III. *DISCUSSION AND ANALYSIS*

#### A. *Service of Process*

#### 1. *Service on Asian Export*

■ K & R attempted to make service on Asian Export on January 6, 1994, by having

service of process in a contract case, a person must have been physically present in British Columbia and entered into a contract there on behalf of a non-resident principal. Rule 13(1) further complicates the issue of when leave of court is required, because it provides that service "on a person outside British Columbia may be effected without order" in certain types of cases, including cases "in respect of a breach, committed in British Columbia, of a contract wherever made" and cases in which "the claim arises out of goods ... sold or delivered in British Columbia." In view of K & R's unequivocal concession at oral argument that service on Asian Export through service on Lilly (a non-officer employee who was never in British Columbia, who did not herself enter into any contract, and who may or may not be an "agent" within the meaning of Rule 11) could not validly be made under British Columbia law without prior leave of court, and in the absence of any assistance from the parties in the form of briefs, argument, or citation of authority, I will not attempt to sort out and reconcile what is obviously a very complex area of British Columbia law.

Constable Gadowski leave a copy of the amended writ of summons and statement of claim with Lilly, a non-officer agent of the corporation. It is undisputed that, under Massachusetts law, a constable may not make service of process in a case in which, as here, the damages exceed $2,500. Thus, even without consideration of other possible defects that Asian Export raises (such as the limited scope of Lilly's authority), the service was ineffective under Massachusetts law. K & R also concedes that the purported service on Asian Export on January 6 was ineffective under British Columbia law, because leave of court was not obtained to serve Lilly. On the face of it, therefore, it appears undisputed that service on Asian Export was ineffective.

K & R has two fallback positions, however. Unfortunately for K & R, neither has merit.

First, K & R argues that Asian Export waived its right to contest service on the grounds just stated because it did not include them along with the other arguments it did make in the Application that Leland filed on Asian Export's behalf on December 28, 1993. There are at least two reasons why this argument is invalid. First, it is difficult to see how Asian Export could have waived an argument regarding the effectiveness of service purportedly made on January 6, 1994, based on a pleading it had filed on December 28, 1993. Second, as K & R acknowledges, (*see* Hall Aff. ¶ 9, Docket No. 8), Leland, without objection from K & R, withdrew his pleading on January 25, 1994, before it was ever considered by the court. Indeed, the very default judgment that K & R now seeks to enforce states on its face that it was entered as a result of Asian Export "not having filed an Appearance to the Amended Writ of Summons." Failure to include an argument in a pleading that is filed before the occurrence of the event to which the argument relates and that is then withdrawn without objection before it is ever considered by a court cannot constitute a waiver of the omitted argument.

K & R's second fallback position is that it effectively re-served Asian Export when it sent Leland a Notice of Motion on February 9, 1994, regarding substituted service on Wong, and then again when it made substituted service on Wong in March 1994. The short, dispositive response is that purported service made *after* February 7 cannot possibly cure defects in an otherwise invalid default judgment entered *on* February 7 on the basis of defendant's failure to make a timely appearance within a prescribed number of days following purported service made *before* February 7.

The slightly longer, but also dispositive, response is that the February 9, 1994 mailing to Leland of the Notice of Motion did not constitute service of original process on anyone, and, even assuming that effective substituted service was made on Wong in March 1994—a matter as to which there is, as discussed below, a factual dispute—such substituted service on Wong surely did not constitute service on Asian Export.

The only information in the summary judgment record concerning the February 9, 1994 mailing to Leland is a statement that it consisted of a cover transmittal letter and a Notice of Motion and supporting Affidavit regarding an application by K & R for an order permitting substituted service to be made on Wong. (Second Hall Aff. ¶ 2, Docket No. 24.) Neither the Notice of Motion nor the supporting Affidavit is in the record; all we have is a copy of the cover transmittal letter. (Second Hall Aff. ¶ 2, Docket No. 24; Cover Transmittal Letter dated February 9, 1994, Ex. B, Docket No. 24.) Assuming, *arguendo*, that K & R could have served Asian Export by making proper service on Leland—a matter that is not at all free from doubt—there is no indication in the cover transmittal letter that the mailing included the amended writ of summons or the statement of claim, or, even if it did, that the package included a statement informing Leland that such process was being sent to him for the purpose of serving it on Asian Export or, for that matter, on anyone else.[8]

---

8. K & R cites the Application Leland filed on December 28, 1993, and the withdrawal of that Application on January 25, 1994, as its only basis

for making service on Asian Export through mail sent to Leland. Both those documents include a legend that gives Leland's office address as "[t]he

Nor does the substituted service on Wong in March 1994 constitute effective service on Asian Export. To understand why it does not, it is first necessary to understand K & R's argument why it does. In reliance on British Columbia law, K & R argues that any disinterested person (including a constable) may make service of process; that where, as here, a corporation and one of its officers are both sued in the same lawsuit, a process server need not serve two copies of the same pleading, but may serve both defendants simultaneously, by serving one complete set of documents on the officer in both his individual and representative capacity; and, therefore, that service on Wong individually also constituted effective service on Asian Export.[9] Even assuming that K & R's statement of British Columbia law is accurate as far as it goes (and, although the point is disputed, that service was in fact made on March 8, 1994), 1 am not persuaded by any evidence presented by K & R that, as a matter of fundamental fairness, British Columbia law would recognize the March 1994 service to be effective as to Asian Export. The order which K & R included in the service package specifically authorized substituted service to be made on a named individual only, and that same order expressly gave that named individual, and only that named individual, a specified number of days to file his appearance. There was no reference to the corporation in that order, and there was nothing in the order or in the service package as a whole that would have put the corporation on notice that K & R deemed service on the named individual to constitute effective service on the corporation

as well. Indeed, a fair reading of the contents of the materials served in March 1994 (assuming they were served) was that K & R was purporting to effect service on Wong in his individual capacity only, and not in his capacity as an officer of Asian Export. To subject Asian Export to a default judgment for not responding to such service under these circumstances would be so unfair that I would be unwilling, without proof of British Columbia law on this specific point, to assume that such service would be recognized under British Columbia law as being effective as to Asian Export.[10]

Of course, for purposes of summary judgment, there is a third problem with the purported service on Asian Export through substituted service on Wong on March 8, 1994. The problem, as discussed immediately below, is that the purported recipient of that service, Sally, denies receiving it. The existence of this disputed issue of fact is enough to require that summary judgment be denied, to the extent K & R relies on such service as the basis for its contention that it made effective service on Asian Export.

### 2. *Service on Wong*

As noted in the preceding section, K & R contends it made substituted service on Wong in compliance with the order entered by the British Columbia Supreme Court on February 14, 1994. That order required, among other things, that K & R serve the amended writ of summons and statement of claim by leaving a copy of each "with an adult person at 11–11 Suban Place, Newton,

---

business location for service of process to ASIAN EXPORT MATERIAL SUPPLY CO. INC." But Leland never said that Asian Export could be served original process by mail, let alone by mail addressed to him. In any event, it is doubtful that a withdrawn pleading and the document by which the withdrawal was effected would be legally effective for the purpose of stating a location for service on Asian Export. We need not reach that issue, however, because, as noted, there is no evidence in the summary judgment record that the purported February 9, 1994 service on Leland included the amended writ of summons or statement of claim.

**9.** Since neither party addresses the question whether the Rules of the British Columbia Su-

preme Court would permit extraterritorial service to be made without prior leave of court on Asian Export through service on Wong, one of its officers, I will not address that issue. *See* note 7, *supra.*

**10.** Furthermore, even if such service on Wong, individually, would be deemed effective under British Columbia law to constitute service on Asian Export, it would not, in my judgment, satisfy the requirement in Section 23A that the defendant "receive notice of the proceedings in sufficient time to enable him to defend." As noted, by the time Wong was purportedly served on March 8, 1994, a default judgment had already entered against Asian Export on February 7, 1994.

Massachusetts." (Order of British Columbia Supreme Court dated February 14, 1994, Ex. A, Docket No. 24.) As support for its contention that it complied with this order, K & R relies on Constable Joyce's return of service dated March 8, 1994. If Constable Joyce in fact made service as stated in his return, such service would no doubt be in compliance with the February 14, 1994 order. The service would also therefore b e effective under British Columbia law at least as to Wong, notwithstanding that, under Massachusetts law, constables may not make service in cases such as this, where the amount of damages in dispute is more than $2,500. But Sally states in her Supplemental Affidavit:

> I was never served with a Complaint or Summons or any other documents for the action filed in British Columbia, Canada for John Wong as indicated in the Return of Service of William G. Joyce dated March 8, 1994. William G. Joyce's Return of Service dated March 8, 1994 is false.

(Supplemental Affidavit of Sally B. Lim ¶ 4, Docket No. 47.) This sworn and unequivocal denial of service is sufficient to create an issue of fact about whether Constable Joyce in fact served Sally and, by implication, whether he served any "adult person at 11–11 Suban Place." [11] Thus, K & R's motion for summary judgment as to Wong must be denied.

### 3. *Service on Sally*

From what has been said thus far, it is apparent that there is at least an issue of fact as to whether K & R effectively served process on Sally. It is undisputed that the purported service by Constable Sullivan on January 5, 1994, was ineffective under Massachusetts law even if it was made, because, under Massachusetts law, constables may not make service where the amount in dispute exceeds $2,500. Further, even though British Columbia law permits service to be made by any disinterested person, K & R has not claimed or attempted to make a showing that British Columbia law would deem a disinterested person's return of service to be conclusive on the issue of whether service had in fact been made. Sally's sworn denial that Constable Sullivan (or anyone else) served her on January 5, 1994 (or at any other time) therefore raises a genuine issue of material fact about whether or not she was served.[12]

---

**11.** Citing Massachusetts law, *e.g.*, *Smith v. Arnold*, 4 Mass.App.Ct. 614, 356 N.E.2d 266, 267 (1976), K & R argues that an officer's return of service is conclusive proof of the facts stated in it. (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment as to Count I and Counterclaim at 16–17, attached to Plaintiff's Motion for Summary Judgment as to Count I and Counterclaim, Docket No. 23.) But it is self-evident that an officer's return cannot be conclusive of any facts under Massachusetts law if the officer in question, here a constable, had no authority to serve the process in question and gave only the minimal bond required of constables under Mass.Gen.Laws ch. 41, § 92. I have no more reason to believe that a disinterested person's return is given conclusive effect under British Columbia law, since K & R does not address the point and the Rules of the British Columbia Supreme Court, attached as Exhibit 8 to Docket No. 32, do not do so either. *See* Rules 11(7) ("affidavit of service ... shall state when, where, how and by whom service ... was effected"); 11(12) ("[s]ervice ... by a sheriff may be proved by a certificate in Form 5 endorsed on a copy of the document served"); 13(13) (service of a document outside British Columbia may be proved in the manner provided for proof of service in British Columbia or by the law of the place where service was made). In the absence of proof on the subject, I am unwilling to assume that British Columbia law would give conclusive effect to the return of a person who has no official standing under law and, for all that appears, is not required to file any bond or other security as a condition of being permitted to serve process.

**12.** K & R may be arguing that it also served Sally on February 9, 1994, when it served on Leland its Notice of Motion regarding Wong, or in March 1994, when Constable Joyce purportedly served Sally as a court-approved substitute for Wong. Such arguments must be rejected for all the reasons previously discussed. Summarizing, a default judgment which, at the time it was entered, was invalid because process had not previously been served cannot be cured by post-judgment service; there is no evidence that the package mailed to Leland on February 9 included the amended writ of summons and statement of claim (or, for that matter, that Leland represented Sally personally); Sally denies that she ever received any process from Constable Joyce; and the service that K & R purportedly made in March 1994 was, according to a fair reading of the terms of the February 14, 1994 order which accompanied it, service on Wong only. Indeed, even if service on Wong might be deemed to constitute effective service on Asian Export by

For all the foregoing reasons, there is a genuine dispute about whether K & R effectively served Asian Export, Wong, or Sally under either Massachusetts or British Columbia law. I therefore recommend that K & R's motion for summary judgment be **DENIED**.

### B. *Personal Jurisdiction*

Although the dispute regarding service of process is dispositive of K & R's motion for summary judgment, the parties devote considerable attention to the issue of defendants' amenability to personal jurisdiction in the courts of British Columbia. For this reason, and because the issue is likely to arise again if K & R attempts to re-serve defendants, I will discuss briefly my views and recommendation on that subject.

#### 1. *Personal Jurisdiction over Asian Export*

For purposes of Section 23A, a foreign court is deemed to have personal jurisdiction over a defendant if "the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved."[13] Asian Export does not challenge the constitutionality of this provision on due process or other grounds. Nor does it contest K & R's claim that the written agreement executed on or about June 7, 1993 included a provision pursuant to which the parties "irrevocably attorn[ed] to the exclusive jurisdiction of the courts of British Columbia," or that such attornment provision, if the June 7, 1993 contract remained in effect, would satisfy the requirements of Section 23A. Instead, Asian Export contends that there was a novation of the written agreement as a result of a series of letters and conversations after its execution, and, therefore, that the British Columbia Supreme Court could not, as a matter of due process, exercise personal jurisdiction over it. (Memorandum in Support of the Opposition of Asian Export Material Supply Co., Inc., John S.C. Wong and Sally B. Lim, to K & R Robinson Enterprises, Ltd's Motion for Summary Judgment at 11, Docket No. 31 ("[K & R's attornment argument] must fail as this contract had been rescinded by the parties.").)

Defendants' argument raises a question reminiscent of one that courts often face when the issue of jurisdiction arises in a purely domestic context: how should a court determine whether a factual predicate for jurisdiction exists when, on a motion to dismiss for lack of personal jurisdiction, the parties proffer conflicting evidence concerning jurisdictional facts? Courts in this circuit and elsewhere have recognized the need for flexibility under these circumstances and have generally endorsed three alternative approaches, known as the *prima facie* standard, the preponderance standard, and the likelihood standard. *E.g., Foster–Miller, Inc., v. Babcock & Wilcox Canada,* 46 F.3d 138 (1st Cir.1995); *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671 (1st Cir.1992). Under the *prima facie* standard, personal jurisdiction exists if specific credible facts, though disputed, are properly supported in the record and are sufficient, if believed, to support jurisdiction. Under the preponderance standard, the court, acting as fact-finder, actually determines on the basis of the evidence proffered, ordinarily in an evidentiary hearing, whether the jurisdictional facts are more likely true than not true. Finally, under the likelihood standard, which falls between the

---

virtue of the fact that Wong was an officer of Asian Export, it is difficult even to conceive of a basis on which service on one individual, Wong, could be thought to constitute effective service on another individual, Sally.

**13.** Section 23A also describes a number of other specific circumstances under which a foreign court's exercise of personal jurisdiction must be upheld, and, beyond that, it includes a catch-all clause which permits the court in which enforcement of a foreign money judgment is sought to "recognize other bases for jurisdiction." This clause has been interpreted to permit the exercise of personal jurisdiction by a foreign court under circumstances that would satisfy American constitutional requirements of minimum contacts and fundamental fairness. *E.g., Bank of Montreal v. Kough,* 612 F.2d at 471. K & R argues, as an independent basis for jurisdiction, that Asian Export's contacts with British Columbia were sufficient to satisfy those requirements. There is no need to address this issue, since, as discussed below, personal jurisdiction was clearly established as a result of the attornment clause.

first two, the court determines, on the basis of the evidence proffered by both parties, whether it is more likely than not that plaintiff will ultimately persuade the factfinder at trial that the jurisdictional facts are true. Although all three standards are available at least in theory each time the problem arises in a purely domestic context, *Foster–Miller* makes clear that the *prima facie* standard is the "conventional" one, and that the other two should be used sparingly and with great caution. *Foster–Miller,* 46 F.3d at 145–148.

If a *prima facie* standard were applied here to determine whether the assertion of personal jurisdiction by the British Columbia Supreme Court over Asian Export satisfied American constitutional standards, then, putting aside the service of process issue, the answer would undoubtedly be that it did. K & R proffered a written contract containing an attornment clause; Asian Export conceded that it entered into the written contract on or about June 7, 1993, (Wong Aff. ¶ 5, Ex. 9, Docket No. 32); and Robinson submitted an affidavit in which he swore that the June 7, 1993 contract remained the "basic contract between K & R Robinson and Asian Export." (*See* Second Affidavit of Reg Robinson ¶ 2, Docket No. 41.) It is true that Wong now claims that the written contract was rescinded as a result of a letter dated June 18, 1993, that he says he sent by facsimile to K & R, (Wong Aff. ¶ 7, Ex. 9, Docket No. 32), but Robinson, in his affidavit, denies that K & R ever received such a letter. (*See* Second Affidavit of Reg Robinson ¶ 1, Docket No. 41.) Despite the conflicts in the proffers, the specific facts proffered by K & R, if believed, would support personal jurisdiction, and that is all that the *prima facie* standard requires. The only serious question, therefore, is whether it is appropriate to apply this standard in this somewhat novel context.

It is conceivable, as a matter of law, that the standards that courts have developed for determining jurisdictional facts in a conventional, domestic case simply do not apply when an American court is making a retrospective determination of whether a foreign court properly asserted jurisdiction over an American defendant in a prior case. For example, it might be argued that the American court should always make a more searching inquiry of the jurisdictional basis for the foreign suit, going so far as to hold a de novo evidentiary hearing with respect to any jurisdictional facts that are genuinely in dispute. I can think of no reason why the constitutional imperative for doing so is greater in a case in which there had been a prior foreign adjudication, however, than in a purely domestic case in which the issue of jurisdiction comes up in the first instance. Indeed, for reasons of international comity, the contrary would appear to be true. *See Canadian Imperial Bank of Commerce v. Saxony Carpet Co.,* 899 F.Supp. 1248, 1252 (S.D.N.Y.1995) ("exceptions involving jurisdictional defects or procedural unfairness [should] be construed especially narrowly 'when the alien jurisdiction is, like Canada, a sister common law jurisdiction with procedures akin to our own' "), *aff'd,* 104 F.3d 352 (2d Cir.1996).

Of course, to say that the *prima facie* standard *may* be used by an American court to determine after the fact whether jurisdiction previously existed in a foreign court is not necessarily to say that it should always be used. An American court asked to make such a determination might have as much flexibility in selecting an appropriate standard in that case as it does in a conventional one. As a threshold matter, a persuasive argument can be made that an American court undertaking a reexamination of the assertion of jurisdiction by a foreign court, in the interest of international comity, should always apply the most deferential standard that is also consistent with due process, i.e., the *prima facie* standard. Under this view, the inquiry need go no further, because the British Columbia court would clearly have had personal jurisdiction under such standard.

Assuming, however, that an American court reexamining the assertion of personal jurisdiction by a foreign court has as much flexibility in selecting a standard as it would have in the first instance in a purely domestic setting, the outcome here would be the same, because, on this record, the *prima facie* standard is indeed the most suitable. *Foster–Miller* makes clear that departures

from the *prima facie* standard should be infrequent and undertaken with great caution, *see Foster–Miller,* 46 F.3d at 148; *Boit* instructs that an appropriate case for departure would be one in which the record regarding jurisdictional facts is "rife with contradictions." *See Boit,* 967 F.2d at 676. This is not such a case.

Asian Export's jurisdictional argument is based almost entirely on a letter dated June 18, 1993, that Wong claims he sent by facsimile to K & R setting forth a "proposal by Asian Export for a new contract." (Wong Aff. ¶ 7, Ex. 9, Docket No. 32.) A copy of the purported letter, which K & R denies receiving, is attached as Exhibit A to Wong's Affidavit. Even assuming that Wong did in fact send the letter, Wong is simply wrong to characterize it as a proposal for a new contract. What it purports to do is reject K & R's contract terms. Specifically, it states, in pertinent part: "Please be informed that we cannot be able to accept your Purchase Agreement due to the complicated terms and conditions." But by the time Wong claims he sent this letter, it was too late for Asian Export to reject the terms that K & R had proposed; by Wong's own admission, it had accepted those terms on or about June 7, 1993. Of course, that would not prevent Asian Export from proposing a modification or even a novation of the June 7, 1993 contract, but such proposal would have to be accepted by K & R. Further, such proposal would have to state in some comprehensible way that the new terms were intended to displace the existing contract in its entirety, including its attornment of jurisdiction clause. Asian Export's jurisdictional argument fails on both counts.

First, the June 18, 1993 letter surely does not propose a novation of the existing contract; at most, it proposes some specific changes in the payment terms. Second, Asian Export's argument regarding K & R's purported acceptance of Wong's supposed proposal for a novation is simply not credible. Asian Export contends that K & R accepted those terms orally on June 29, 1993, and that

it followed up its oral acceptance with a written acceptance that same date. The purported acceptance letter is attached to Wong's Affidavit as Exhibit B. (Wong Aff. ¶ 8, Ex. 9, Docket No. 32.) Exhibit B, however, is not an acceptance letter at all; it is nothing more than a handwritten note to Wong bearing K & R's official corporate name and address and the name and address of its bank. It does not acknowledge the letter dated June 18, 1993 that Wong contends he sent; it does not acknowledge any proposal by Wong or Asian Export for new contract terms; and it cannot conceivably be read as constituting an acceptance of a proposal to displace the original, written contract in its entirety, or even in part. Using this letter as a benchmark of Wong's understanding of what it means to accept a proposal for a new contract, Wong's contention that there was a prior, oral acceptance by K & R is at least highly suspect. Thus, the record is not "rife with contradictions," or, at least, not with credible ones. For this reason, I would recommend use of the *prima facie* standard even if I were free to select the appropriate standard *de novo.*[14]

### 2. *Personal Jurisdiction over Wong*

A similar analysis applies to the question of whether Wong was amenable to personal jurisdiction in British Columbia. Robinson contends in two sworn affidavits that Wong came to British Columbia in August 1993 to oversee delivery of the scrap metal and that, while there, in order to induce K & R to make delivery, he falsely represented to Robinson that the proceeds of the letter of credit Asian Export proposed to assign to K & R were adequate to cover the purchase price. (*E.g.,* Robinson Aff. ¶ 3, Docket No. 7, Robinson Affidavit Submitted to the British Columbia Supreme Court ¶ 9, attached as Ex. A to Ex. 6, Docket No. 32.) Again, defendants deny the facts underlying K & R's theory of jurisdiction, (Wong Aff. ¶ 18, Ex. 9, Docket No. 32), but they do not take issue with the legal proposition that, if those facts were true, they would support jurisdiction. Since those facts are well-supported by affidavit, it

---

14. Indeed, for much the same reasons that it would be appropriate to select the prima facie standard, personal jurisdiction would surely exist on this record even under the more demanding likelihood standard.

is clear that, if a *prima facie* standard were applied, Wong would be amenable to personal jurisdiction in the courts of British Columbia.

Again, therefore, the question reduces to whether the *prima facie* standard is appropriately applied here, and, again, the answer is that it should be, both in the interest of international comity and because, in any event, it is the most suitable standard. Wong is Asian Export's most senior official, and he is its key witness in the British Columbia breach of contract case against Asian Export. He will therefore have to travel to and be present in British Columbia in any event to assist in the defense of that case (assuming, as is likely, that K & R now makes good service on Asian Export). The fact that Wong will have to spend time in British Columbia to defend the case against Asian Export is enough to justify the use of the *prima facie* standard. *See Boit,* 967 F.2d at 676–677 (reserving stricter standards for cases in which it would be "unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in [a foreign jurisdiction] without first requiring more of the plaintiff than a *prima facie* showing of facts essential to *in personam* jurisdiction"); *see also Foster–Miller,* 46 F.3d at 146, 148 (warning that the preponderance standard "must be used discreetly" and that "judges employing [the likelihood] standard should proceed with great care").

Wong is therefore amenable to personal jurisdiction in the British Columbia Supreme Court on K & R's claim that he intentionally or negligently misrepresented the value of the substitute letter of credit.

### 3. *Personal Jurisdiction over Sally*

The situation concerning Sally is entirely different. Even under a *prima facie* standard, there are insufficient facts in the record to support the assertion of personal jurisdiction over her by the courts of British Columbia. Indeed, K & R's statement of claim, which is attached as Exhibit C to the Affidavit of James A. Hall (Docket No. 8), does not even allege that Sally had any contacts with British Columbia, other than asserting that she knew that Wong had made false representations; that she had a duty under British Columbia law to correct them; and that her silence induced K & R to make delivery of the scrap before payment was fully secured. The statement of claim says nothing about Sally's physical presence in British Columbia, and it does not accuse her of using the telephone or other means of communication to make false statements there.

The Affidavit of Reg Robinson (Docket No. 7), which is the only document found in the summary judgment record with evidentiary significance concerning Sally, does not cure this omission. With respect to Sally, Robinson states only that she called him in British Columbia and that "[t]he claim against her is based in part upon her failure during those conversations to disclose that there were insufficient proceeds available from the letter of credit drawn on the Bank of China to pay Asian Export's obligations to the plaintiff." (Robinson Aff. ¶ 3, Docket No. 7.) A statement explaining the legal basis of K & R's claim is no substitute for a statement of facts which, if true, would support jurisdiction. Indeed, even if Robinson's explanation of the legal basis for K & R's claim were construed as a sworn statement of fact to the effect that Sally failed during telephone conversations with him to disclose Wong's fraud, that is hardly a basis for jurisdiction, especially because Robinson never claims that the subject of payment ever came up during those conversations.[15] Thus, even if all facts of record concerning Sally were true, they would not support jurisdiction over her in British Columbia. *See, e.g., Federated Rural Electric Insurance Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 395–396 (7th Cir.1994) (holding defendant's contacts "insufficient to confer personal jurisdiction" where defendant, *inter alia,* communicated with plain-

---

**15.** Although it was unnecessary for her to do so to defeat personal jurisdiction, Sally states in her Affidavit that she had no contact with Robinson except for two or three telephone conversations; that the conversations never lasted more than a minute and concerned shipping schedules or the whereabouts of her husband; and that she was never physically present in British Columbia. (Affidavit of Sally B. Lim ¶¶ 2–4, Ex. 10, Docket No. 32.) These assertions of fact are not refuted.

tiff's office in the forum state by telephone and mail, bought stock from plaintiff while plaintiff was in forum state, and sent premium payments to forum state); *see also Chlebda v. H.E. Fortna and Brother, Inc.*, 609 F.2d 1022, 1023–1024 (1st Cir.1979) (rejecting "somewhat metaphysical contention" that jurisdiction could be based on failure of out-of-state defendant to warn resident of forum state of design defect associated with defendant's product; "[t]he whole thrust of plaintiff's claim is that there was no contact [with the forum state] at all ... [and] that defendant did nothing").

For all the foregoing reasons, I recommend that K & R's motion for summary judgment be **DENIED** as to Sally, even if she were properly served, on the alternative ground that she is not subject to personal jurisdiction in the British Columbia Supreme Court.

## IV. *SUMMARY AND RECOMMENDATION*

For the reasons stated above, I recommend that K & R's motion for summary judgment (Docket No. 23) be **DENIED** as to all defendants.

## V. *IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS*

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court **WITHIN 10 DAYS** of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered

pursuant to this Report and Recommendation. *See United States v. Valencia–Copete*, 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 148–149, 106 S.Ct. 466, 471–472, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).