MANCHES & CO. *vs.* SUZANNE GILBEY & another.[1]

Barnstable. December 5, 1994. - February 6, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Jurisdiction*, Nonresident, Forum non conveniens. *Due Process of Law*, Jurisdiction over nonresident. *Money-Judgments of Foreign States. Exchange Rate. Judgment*, Default. *Words*, "Payment day rule," "Breach day rule," "Judgment day rule."

In an action brought pursuant to G. L. c. 235, § 23A, the Uniform Foreign Money-Judgments Recognition Act, to enforce a default judgment entered in the Queen's Bench Division of the High Court of Justice in London, there was no statutory basis to deny enforcement of the foreign judgment. [416]

An obligation to pay an English judgment expressed in pounds was to be enforced pursuant to G. L. c. 235, § 23A, by a judgment ordering the defendants at their option either to pay in pounds (with interest at the Massachusetts rate from the date of the entry of the action until the date of payment) or to pay the equivalent in dollars, determined by the exchange rate in effect on the day of payment (or the day before payment), in accordance with the so-called payment day rule. [416-420]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1992.

The case was heard by *Gerald F. O'Neill, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael A. Albert* for the plaintiff.

*Peter Thornton*, pro se.

*Suzanne Gilbey*, pro se, joined in a brief.

WILKINS, J. On August 20, 1992, the Queen's Bench Division of the High Court of Justice in London entered a default

---

[1]Peter Thornton, her stepfather.

judgment in favor of Manches & Co. (Manches), a London firm of solicitors, against Suzanne Gilbey and Peter Thornton totaling £30,138.35. On November 9, 1992, Manches commenced this action in the Superior Court in Barnstable County to enforce the foreign judgment pursuant to G. L. c. 235, § 23A (1992 ed.), the Uniform Foreign Money-Judgments Recognition Act. Manches's underlying claim was that the defendants were liable for legal services rendered to Gilbey in England following the death of her father.

The principal issue in this appeal concerns the amount of the judgment that should have been entered in Massachusetts in view of changes in the exchange rate between the British pound and the American dollar. It appears that on August 20, 1992, the date that judgment was entered in London, approximately $58,450 equaled the amount stated in pounds in the English judgment (£30,138.35). On December 13, 1993, the date on which summary judgment was granted in favor of Manches in Barnstable Superior Court, approximately $45,130 would have purchased £30,138.35.[2] Thus, because of the decline in the British pound in relation to the American dollar, the defendants could satisfy their obligation to Manches, expressed in pounds, by paying out considerably fewer dollars in late 1993 than they could have sixteen months earlier when the English default judgment was entered.

Because the motion judge entered judgment in dollars using the latter exchange rate (the one more beneficial to the defendants), Manches has appealed. Because the motion judge entered judgment in favor of Manches, the defendants have appealed, arguing that, for various reasons, the English judgment is not worthy of enforcement in Massachusetts. We transferred the cross appeals to this court on our own motion. If the defendants are correct in their claim that the English judgment is unenforceable, the question of the proper

---

[2] It appears that the exchange rate on December 13, 1993, was approximately $1.50 for each pound. On August 20, 1992, the exchange rate had been approximately $1.94 for each pound.

amount of any judgment that should be entered in favor of Manches in Massachusetts is unimportant. Therefore, we shall discuss the defendants' appeal first. We conclude that the English judgment is enforceable in Massachusetts and that the appropriate judgment is one that reflects the exchange rate at the time of payment of the judgment.

1. None of the defendants' arguments in opposition to the enforcement of the English judgment has merit. The defendants rely on grounds set forth in G. L. c. 235, § 23A, that, if they exist, would deny enforcement of a foreign judgment: lack of jurisdiction over them in England, denial of due process in the English justice system, and a form of forum nonconveniens.

The English court had jurisdiction over the defendants. Manches received court permission to serve the defendants outside the jurisdiction. The contract for legal services to be rendered in England was governed by English law, and thus under English law the court there had jurisdiction over the parties. See *Bangladesh Chem. Indus. Corp.* v. *Henry Stephens Shipping Co., Ltd.,* [1981] 2 Lloyd's Rep. 389, 392; G. L. c. 223A, § 3 (a) (1992 ed.); *Haddad* v. *Taylor,* 32 Mass. App. Ct. 332, 336 (1992).

There is no showing that the English system lacked "procedures compatible with the requirements of due process" (G. L. c. 235, § 23A [1]) or that the defendants were denied due process in their attempt to claim an appeal from the default judgment. England was not a "seriously inconvenient forum" (G. L. c. 235, § 23A [6]), and that statutory basis for denial of enforcement of a foreign judgment has no application in any event, because it applies when, unlike this case, jurisdiction in the foreign court was based "only on personal service." See *Bank of Nova Scotia* v. *Tschabold Equip. Ltd.,* 51 Wash. App. 749, 758 (1988).

2. The obligation to pay pounds, expressed in the English judgment, should be enforced by a judgment that orders the defendants at their option either (a) to pay £30,138.35 (with interest) or (b) to pay the equivalent in dollars of £30,138.35 (with interest), determined by the exchange rate in effect on

the day of payment (or the day before payment). Manches is entitled to be restored to the position in which it would have been if the defendants had paid their obligations, but it is not entitled to more. The so-called payment day rule achieves this result. *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1328 (7th Cir. 1992).

There is no guiding Massachusetts law on this point.[3] The decided cases in this country have adopted various positions. Some have followed the breach day rule, the one Manches advocates, in which the conversion of foreign obligations is made as of the date of breach of the obligation.[4] See, e.g., *Gathercrest, Ltd.* v. *First Am. Bank & Trust*, 805 F.2d 995, 997 (11th Cir. 1986). Others have used the judgment day

---

[3]In *American Express Co.* v. *Cosmopolitan Trust Co.*, 239 Mass. 249, 251 (1921), without discussion, the court applied the breach day rule to determine damages in dollars for a loss apparently sustained in Italian lire. The result appears to have been dictated by a statute, whose successor was repealed on the adoption of the Uniform Commercial Code (see St. 1957, c. 765, § 2), that provided that the rate of exchange on the date of demand be used. R.L. c. 73, § 9 (1902). One may infer from the use of presumably different conversion rates on separate foreign judgments that in *Desjardins Ducharme* v. *Hunnewell*, 411 Mass. 711 (1992), the breach day rule, rather than the judgment day rule or payment day rule, was used, but the point was neither argued nor discussed.

On the other hand, judgments to pay alimony in dollars or at the conversion rate of a foreign currency at the date of each payment have been upheld. See *Stanton-Abbott* v. *Stanton-Abbott*, 372 Mass. 814 (1977); *Meyer* v. *Meyer*, 335 Mass. 293 (1957). Cf. *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 622 (1987) (alimony might appropriately be adjusted when substantial increase in value of foreign currency improved ability to pay alimony in dollars). These cases in effect involve application of a payment day rule.

We are aware of no rule of law that bars the award of damages in Massachusetts expressed in a foreign currency. See *Henshaw* v. *Blood*, 1 Mass. 35, 40-41 (1804); Restatement (Third) of Foreign Relations Law § 823 comment b (1987). The Uniform Commercial Code recognizes, in G. L. c. 106, § 3-107 (1992 ed.), that an instrument stated in a foreign currency that is payable in that currency may be satisfied in that currency at the rate of exchange for that currency on the day on which it is payable.

[4]Because there is no evidence of the dates on which the defendants were in breach of their obligations to make payment to Manches, Manches asserts the breach date is represented by the date of the English default judgment.

rule, converting the foreign obligation into dollars based on
the exchange rate on the date the judgment is entered. See,
e.g., *Agfa-Gevaert, A.G.* v. *A.B. Dick Co.,* 879 F.2d 1518,
1524 (7th Cir. 1989) (applying New York statute). The lat-
ter is the rule that the defendants prefer and that the motion
judge adopted.[5] We prefer a third option, the payment day
rule.

The Restatement (Third) of Foreign Relations Law § 823
(1987) advises that the conversion to dollars should be
"made at such rate as to make the creditor whole and to
avoid rewarding a debtor who has delayed in carrying out the
obligation." In comment c of § 823, the Restatement be-
comes more specific and tentatively adopts the breach day
rule if, as here, the foreign currency has depreciated since
the breach, and, if the foreign currency has appreciated since
the breach, it adopts the exchange rate on the date of judg-
ment or the date of payment. "The court is free, however, to
depart from those guidelines when the interests of justice re-
quire it." *Id.* at 333.

The Uniform Foreign-Money Claims Act, which has been
enacted in eighteen American jurisdictions (but not in Mas-
sachusetts), adopts the payment day rule.[6] Uniform Foreign-
Money Claims Act § 1 (3), 13 U.L.A. 42, 44 (Supp. 1994).

---

[5]Other courts have attempted to mix those two rules depending on the
circumstances. Some have decided which conversion rate applies based on
whether "the obligation arises entirely under foreign law." See, e.g., *In re
Good Hope Chem. Corp.,* 747 F.2d 806, 811 (1st Cir. 1984), cert. denied,
471 U.S. 1102 (1985). Other cases have expressed an overt preference for
creditors. *Nikimiha Sec. Ltd.* v. *Trend Group Ltd.,* 646 F. Supp. 1211,
1228 (E.D. Pa. 1986).

[6]These jurisdictions are: California, Colorado, Connecticut, Hawaii, Illi-
nois, Minnesota, Montana, Nevada, New Jersey, New Mexico, North Da-
kota, Oklahoma, Oregon, Utah, the Virgin Islands, Virginia, Washington,
and Wisconsin. See Uniform Foreign-Money Claims Act, 13 U.L.A. 42
(Supp. 1994); and Okla. Stat. tit. 12 §§ 729.1-729.16 (Supp. 1994). For
three of these jurisdictions, Connecticut, Hawaii and the Virgin Islands, a
note describes the adoptions as a "substantial adoption of the major provi-
sions of the Uniform Act," but states that they "depart[] from the official
text in such manner that the various instances of substitution, omission
and additional matter cannot be clearly indicated by statutory notes." 13
U.L.A. at 44 (Supp. 1994).

It is this rule that, for the circumstances of this case, we apply as a matter of common law. That rule will award Manches in pounds (or the equivalent in dollars on or near the day of payment) the amount it would have recovered had it been able to collect on the judgment in Great Britain. Satisfaction of the judgment in present day pounds will make Manches whole. In entering judgments, courts do not normally reflect changes in the purchasing power of local currency between the date of a breach and the date of the award of judgment. As the prefatory note to the Uniform Act states: "The principle of the Act is to restore the aggrieved party to the economic position it would have been in had the wrong not occurred. . . . Courts should enter judgments in the money customarily used by the injured person." *Id.* at 43. Manches incurred its expenses in England, expected to be compensated in pounds, and sustained its loss in pounds. The payment day rule is fair in this case because its application meets the reasonable expectations of the parties in this case.[7]

It is said that the payment day rule is the one used in "most of the major civilized countries of the world." *Id.* If the circumstances were reversed, courts in England would apply it or use the nearest practicable date. See *Miliangos* v. *George Frank (Textiles) Ltd.*, [1976] App. Cas. 443, 468-469 (favoring payment date rule because "[t]his date gets nearest to securing to the creditor exactly what he bargained for," where payment date was understood as the date execution of judgment would be authorized). See also *Owners of M.V. Eleftherotria* v. *Owners of M.V. Despina R*, [1979] App. Cas. 685, 700-701 (where the contract provides no answer to the currency question, "the damage should be calcu-

---

[7] We leave to another time the question whether to adopt other applications of the Uniform Foreign-Money Claims Act, which as applied in certain other situations has been criticized. R. Brand, Exchange Loss Damages and the Uniform Foreign-Money Claims Act, 23 Law & Pol'y Int'l Bus. 1, 75, 83 (1991-1992).

lated in the currency in which the loss was felt by the plaintiff or 'which most truly expresses his loss'"").[8]

Judgment shall be entered ordering that Manches & Co. shall recover from the defendants, at the defendants' option, either (a) the amount of the English judgment (£30,138.35) or (b) the equivalent in dollars of the English judgment determined at the exchange rate in effect on the day of or the day before payment, with interest on that amount (in each instance), payable in pounds or dollars, at the Massachusetts rate of interest from the date of entry of the action until the date of payment.[9]

*So ordered.*

---

[8]There has been no claim that, on conflict of laws principles, the conversion date question should be determined by the law of Great Britain where the contract for services was made and the default judgment was entered. See *Huntington Nat'l Bank* v. *Sproul,* 116 N.M. 254, 258-259 (1993); Restatement (Second) of Conflict of Laws § 99 (1971). We assume, without deciding, that the internal substantive law of Massachusetts governs the conversion date question.

[9]If there is action taken to execute on the judgment, it is likely that only option (b) of the judgment will be practicable.

The parties did not raise the question in the Superior Court of how interest should be expressed in the Massachusetts judgment or whether English or Massachusetts law should determine interest questions. See *Morris* v. *Watsco, Inc.,* 385 Mass. 672, 676 (1982) (interest obligation to be determined by law governing contract rights); *.Quaker State Oil Ref. Corp.* v. *Garrity Oil Co.,* 884 F.2d 1510, 1514 (1st Cir. 1989) (Massachusetts would not automatically invoke its statute on prejudgment interest). The judge awarded interest from the time of entry of this action at the rate of interest payable under Massachusetts law. No challenge is made on appeal to that ruling, although Manches states that English law would call for interest at an annual rate of 15% from the date of the English judgment, payable on the base amount due (i.e., not including interest) expressed in the English judgment.