EVANS CABINET CORPORATION,
Plaintiff,

v.

KITCHEN INTERNATIONAL,
INC., Defendant.

Civil Action No. 07–10825–JLT.

United States District Court,
D. Massachusetts.

Nov. 4, 2008.

Edward J. Fallman, Law Offices of Edward J. Fullman, Wakefield, MA, for Defendant.

Alex C. Gianacoplos, Duggan & Caccavaro, Norwood, MA, for Plaintiff.

*MEMORANDUM*

TAURO, District Judge.

I.  *Introduction*

Plaintiff Evans Cabinet Corporation contends that Defendant Kitchen Interna-

tional, Inc. has failed to pay Plaintiff pursuant to a contract to manufacture and supply cabinetry. Plaintiff brings common law claims for: (1) breach of contract; and (2) unjust enrichment. Presently at issue is Defendant's *Renewed Motion to Dismiss*, which this court converts into a *Motion for Summary Judgment.* For the following reasons, Defendant's Motion is ALLOWED.

## II. *Background*[1]

Plaintiff is a Georgia corporation with a principal place of business in Georgia.[2] Defendant is a Louisiana corporation with a satellite and administrative office in Montreal, Quebec.[3]

Plaintiff and Defendant entered into a contract whereby Plaintiff agreed to provide Defendant with cabinetry and other materials for installation at various residential construction projects.[4] Plaintiff provided Defendant with the cabinetry and other materials, which Defendant installed at projects in Massachusetts, Rhode Island, Connecticut, New Hampshire, Pennsylvania, and Virginia.[5] Defendant has not paid Plaintiff for the cabinetry and other materials,[6] claiming that Plaintiff breached their agreement by manufacturing and delivering defective and nonconforming cabinetry for each of the project locations.[7]

On May 8, 2006, Defendant sued Plaintiff in the Quebec Superior Court in Montreal.[8] After receiving process and notice of the Quebec proceeding,[9] Plaintiff failed to appear or otherwise file a responsive pleading.[10] On May 31, 2007, the Quebec Superior Court entered a default judgment against Plaintiff in the amount of $149,354.74.[11] Defendant filed a second lawsuit against Plaintiff in the Quebec Superior Court on June 15, 2007, which Parties have represented is still pending.[12] The two Quebec proceedings and this action involve the same underlying disputes arising from the same construction projects.[13]

Plaintiff brought this action on April 30, 2007 to recover contract and unjust enrichment damages for ten of the twelve construction projects, plus interest and costs. On July 30, 2007, Defendant filed a *Motion to Dismiss* pursuant to Rule 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure, claiming that: (1) according to the principles of res judicata and claim preclusion, the prior default judgment precludes this action; and (2) this court lacks personal jurisdiction over Defendant.

1. The court presents these facts in the light most favorable to Plaintiff, the party that does not prevail on summary judgment. *See Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 34 (1st Cir.2005) ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

2. Compl. ¶ 1.

3. Def.'s Mem. Supp. Mot. to Dismiss 1, July 30, 2007.

4. Compl. ¶ 5.

5. *Id.* ¶ 7.

6. *Id.* ¶ 9.

7. Def.'s Mem. Supp. Mot. to Dismiss 2, July 30, 2007.

8. Markakis Aff. Ex. A–1 at 1–3.

9. *Id.* Ex. A–3 at 1.

10. Def.'s Mem. Supp. Mot. to Dismiss 2, July 30, 2007.

11. Markakis Aff. Ex. A–4 at 3.

12. *Id.* Ex. A–5 at 1–3.

13. Shiell Aff. ¶ 9; *see* Mot. to Dismiss Hr'g Tr. 9, Dec. 5, 2007.

On December 5, 2007, this court denied Defendant's *Motion to Dismiss* without prejudice to allow Parties to conduct limited discovery on whether the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff. On March 4, 2008, Defendant filed a *Renewed Motion to Dismiss.*

## III. *Discussion*

### A. *Legal Standard for Summary Judgment*

In its *Renewed Motion to Dismiss*, Defendant raised a 12(b)(6) res judicata defense.[14] Relevant to this defense is the issue of whether the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff. Parties have conducted initial discovery on the personal jurisdiction issue, which both Parties have relied on in their arguments. This court has sufficient evidence on this issue to convert, sua sponte, Defendant's *Renewed Motion to Dismiss* into a *Motion for Summary Judgment* pursuant to Rules 12(b) and 56(c).[15]

A court may grant summary judgment when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16]

The court must examine the facts in the light most favorable to the nonmoving party, resolving any reasonable inference in that party's favor.[17]

### B. *Foreign Money–Judgments Recognition Act*

■ In determining whether to enforce a foreign judgment, a federal court exercising diversity jurisdiction follows the "laws of the state where the federal court is located."[18] Because this court is sitting in diversity, it will apply Massachusetts law. The applicable law in this case is Massachusetts's codified version of the Uniform Foreign Money–Judgments Recognition Act ("Recognition Act").[19]

■ The Recognition Act provides in relevant part:

[A]ny foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.[20]

---

**14.** Because a decision on the res judicata issue is sufficient to dispose of Defendant's Motion, this court does not reach Defendant's 12(b)(2) or 12(b)(3) defenses.

**15.** *See Velazquez–Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir.2000) ("Noticing that matters outside the pleadings were submitted to both sides, the district court properly converted defendant's motion to dismiss to a motion for summary judgment pursuant to [Rule 12(b)]."); *see also* Fed.R.Civ.P. 12(b) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

This court provided notice of the conversion to Parties in open court. Mot. to Dismiss Hr'g Tr. 11, Dec. 5, 2007.

**16.** Fed.R.Civ.P. 56(c).

**17.** *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir.2002).

**18.** *Sangiovanni Hernandez v. Dominicana de Aviacion, C. Por A.*, 556 F.2d 611, 614 (1st Cir.1977); *Society of Lloyd's v. Hamilton*, 501 F.Supp.2d 248, 251 (D.Mass.2007).

**19.** *See* Mass. Gen. Laws Ann. ch. 235, § 23A (West 2000).

**20.** *Id.*

The term " 'foreign judgment' means any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters." [21] A default judgment constitutes a "final judgment" under the Recognition Act.[22]

### 1. *Personal Jurisdiction over Plaintiff in the Quebec Superior Court*

■ The Recognition Act provides in relevant part that a foreign judgment shall not be conclusive if "the foreign court did not have personal jurisdiction over the defendant." [23] Plaintiff argues that this court must not recognize the Quebec default judgment because the Quebec Superior Court did not properly exercise personal jurisdiction over Plaintiff.

### a. *Choice of Personal Jurisdiction Law*

As a threshold matter, this court considers which personal jurisdiction law, that of Quebec or the United States, applies in this case. In determining whether a foreign court properly exercised personal jurisdiction over a litigant for purposes of the Recognition Act, courts in other jurisdictions have split over whether to apply the personal jurisdiction law of the rendering country, the forum state, or both.[24] Without deciding the choice of law issue, this court will address both Quebec and American law in determining whether the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff.[25]

### b. *Personal Jurisdiction Analysis*

To elucidate Quebec law, Defendant produced the affidavit of a Quebec lawyer, Tom Markakis, stating that the Quebec Superior Court properly exercised jurisdiction pursuant to article 3136 of the Quebec Civil Code. Article 3136 provides that "[e]ven though a Quebec authority has no jurisdiction to hear a dispute, it may hear it, if the dispute has a sufficient connection with Quebec, where proceedings cannot possibly be instituted outside Quebec or where the institution of such proceedings outside Quebec cannot reasonably be required." [26] Mr. Markakis certified that having a place of business in Quebec establishes a sufficient connection with the jurisdiction to institute legal proceedings in

---

**21.** *Id.*

**22.** *See, e.g., Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1408 (9th Cir.1995) (analyzing the preclusive effect of Iranian default judgments pursuant to the California Recognition Act); *Manches & Co. v. Gilbey,* 419 Mass. 414, 646 N.E.2d 86, 86–87 (1995) (analyzing the preclusive effect of an English default judgment pursuant to the Massachusetts Recognition Act).

**23.** § 23A (listing three instances in which a foreign judgments shall not be conclusive).

**24.** *See, e.g., Pure Fishing, Inc. v. Silver Star Co.,* 202 F.Supp.2d 905, 913–17 (N.D.Iowa 2002) (applying Iowa personal jurisdiction law to determine whether an Australian court properly exercised personal jurisdiction); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.,* 899 F.Supp. 1248, 1252–53

(S.D.N.Y.1995) (applying Quebec personal jurisdiction law and New York's long-arm statute to determine whether a Quebec court properly exercised personal jurisdiction).

**25.** Rule 44.1 provides that

[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.

Fed. R. Civ. Proc. 44.1. Defendant raised the issue of Quebec law in its motion papers, thereby providing notice under Rule 44.1. *See* Markakis Aff. 1–2.

**26.** Civil Code of Quebec, S.Q., ch. 64, art. 3136.

the province.[27]   Given that Defendant maintains a Montreal office, Quebec law entitled Defendant to institute the prior proceeding.   But Mr. Markakis's affidavit is deficient as to the precise issue of whether the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff pursuant to article 3136 of the Civil Code of Quebec.

Article 3136 implies "that in some instances Quebec courts may decline or acquire jurisdiction depending on the connection with Quebec."[28]   The "danger" of article 3136 is that "in borderline cases 'where there is no one forum that is the most appropriate, the domestic forum wins out by default[,] ... provided it is an appropriate forum.'"[29] The Southern District of New York has recognized that a Quebec court may exercise personal jurisdiction if "the contract [at issue] was concluded in Quebec *or* if the cause of action arose in Quebec."[30]

In the United States, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction."[31]   A court has general jurisdiction "when the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit."[32]   Defendant does not argue that the Quebec Superior Court could have exercised the Quebec equivalent of general jurisdiction over Plaintiff.   To establish personal jurisdiction, then, a district court sitting in Massachusetts must find "that the Massachusetts long-arm statute grants jurisdiction and, if it does, that the existence of jurisdiction under the statute is consistent with the [U.S. C]onstitution."[33]

The Massachusetts long-arm statute provides in relevant part that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in [the] commonwealth."[34]   A court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'"[35] The Constitution requires that a defendant "have certain minimum contacts with [the forum] such that maintenance of the suit

---

27.   Markakis Aff. 2.

28.   Jean–Gabriel Castel, *The Uncertainty Factor in Canadian Private International Law,* 52 McGill L.J. 555, 562 (2007).

29.   *Id.* (quoting *Amchem Products Inc. v. B.C. (Workers' Comp. Bd.),* [1993] 1 S.C.R. 897, 931).

30.   *Canadian Imperial Bank of Commerce,* 899 F.Supp. at 1253 (citing the declaration of a licensed Quebec attorney); *cf.* Jeffrey Talpis & Shelley L. Kath, *The Exceptional as Commonplace in Quebec Forum Non Conveniens Law; Cambior, a Case in Point,* 34 R.J.T. 761, 837 (2000) (discussing the "discretionary power" Quebec law provides its courts to determine whether to exercise personal jurisdiction).

31.   *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998).

32.   *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51 (1st Cir.2002) (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)).

33.   *Id.* at 52.

34.   Mass. Gen. Laws Ann. ch.   223A, § 3 (West 2000).

35.   *Daynard,* 290 F.3d at 52 (quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441, 280 N.E.2d 423, 424 (1972) (other citations omitted)).

does not offend 'traditional notions of fair play and substantial justice.' " [36]

The Quebec Superior Court's exercise of personal jurisdiction over Plaintiff did not contravene "traditional notions of fair play and substantial justice." Plaintiff had several contacts with Quebec. All the "orders, communications, payments, correspondence and dealings" between Parties occurred through Defendant's Montreal office.[37] Moreover, Parties agreed to create a product showroom at Defendant's Montreal office, which was ultimately constructed.[38] The purpose of this showroom was to display Plaintiff's products to potential customers and sales agents from Canada and New England.[39] Because under either Quebec or Massachusetts law the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff, Plaintiff's argument that the Quebec default judgment is not conclusive fails.

### 2. *Res Judicata: Claim Preclusion*

"Res judicata" is a generic term that includes both "claim preclusion" and "issue preclusion." [40] Claim preclusion, which is also referred to as "merger" or "bar," prohibits the continuation of an action that is based on the same claim that was the subject of an earlier action.[41] Issue preclusion, which is also known as "collateral estoppel," prevents relitigation of an issue that was already determined in a prior action.[42] At issue in this case is claim preclusion.

#### a. *Choice of Res Judicata Law*

█ This court will first consider whether federal or Massachusetts res judicata law applies. In a federal diversity proceeding, such as this one, if the prior judgment is a state-court judgment, the forum state's res judicata law will apply.[43] The Recognition Act states in relevant

---

**36.** *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) (other citations omitted)).

**37.** Shiell Aff. 3.

**38.** Shiell Supplemental Aff. 1.

Plaintiff produced an affidavit from its CEO, Mark Trexler, in which Mr. Trexler stated that Plaintiff was not aware of the Montreal showroom. Trexler Supplemental Aff. 2. But Defendant has produced overwhelming evidence that Plaintiff was both aware of the showroom and authorized its construction. This evidence includes (1) photographs of the showroom depicting Plaintiff's displayed brochures; (2) photographs of a shipping container of showroom parts with Plaintiff's return address affixed; (3) a photograph of the shipping code affixed to the shipping container of showroom parts; and (4) a copy of the showroom schematic plan entitled "EVANS SHOWROOM." Shiell Supplemental Aff. Ex. A at 1–9; Shiell Rebuttal Aff. Ex. A at 1. Defendant offered a convincing explanation for Mr. Trexler's lack of knowledge of the showroom: with respect to the showroom,

Defendant dealt with Paul Gatti, not Mr. Trexler. Shiell Rebuttal Aff. 2.

**39.** Shiell Supplemental Aff. 1.

The Recognition Act provides in relevant part that

[a] foreign judgment shall not be refused recognition for lack of personal jurisdiction if . . . the defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state. Ch. 235, § 23A. Because Plaintiff had sufficient contacts with Quebec for the Quebec Superior Court to exercise personal jurisdiction over Plaintiff, this court does not address whether the showroom would qualify as a "business office" for purposes of this section.

**40.** 17 Mass. Prac. *Prima Facie Case* § 2.72 (5th ed.2008).

**41.** *Id.*

**42.** *Id.*

**43.** *See* 8 Fed. Proc., L.Ed. *Courts and Judicial System* § 20:611 (2008) (citing *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 116

part that a foreign judgment is enforceable "in the same manner as the judgment of a sister state which is entitled to full faith and credit."[44] Because the Recognition Act protects a foreign judgment as if it were a "sister state" judgment, the Quebec default judgment in this case is more akin to a "state-court judgment" than a "federal judgment." Accordingly, Massachusetts supplies the applicable res judicata law. But a Massachusetts court must give a prior judgment the same finality it would receive in the rendering jurisdiction and would therefore apply the rendering jurisdiction's res judicata rules.[45] In this case, then, Quebec's rules of res judicata govern the preclusive effect of the Quebec default judgment.

### b. *Res Judicata Analysis*

Under Quebec law, a defendant may ask a court to dismiss an action on res judicata grounds.[46] The Civil Code of Quebec provides in relevant part that "[t]he authority of a final judgment (res judicata) is an absolute presumption; it applies only to the object of the judgment when the demand is based on the same cause and is between the same parties acting in the same qualities and the thing applied for is the same."[47] The Quebec res judicata statute requires three elements: (1) identical cause; (2) identical object; and (3) identical parties.[48]

Here, the Quebec default judgment precludes the relitigation of Plaintiff's claim. Because a default judgment is a final judgment under the Recognition Act,[49] the Quebec default judgment qualifies for res judicata treatment. First, this action involves the same cause of action—breach of contract—as the Quebec proceeding. Second, as both Parties stipulated in open court, this action involves the same construction projects as were at issue in the Quebec proceeding.[50] Third, the parties to this action were the same parties to the Quebec proceeding, with the only difference being that Plaintiff here was the defendant in Quebec.

Pursuant to the Recognition Act, the Quebec default judgment is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit. The Quebec Superior Court properly exercised personal jurisdiction over Plaintiff, and, therefore, the Quebec default judgment is conclusive. Under the res judicata principle of claim preclusion, the Quebec default judgment precludes the maintenance of this action.[51]

### IV. *Conclusion*

For the foregoing reasons, Defendant's *Motion for Summary Judgment* is ALLOWED.

AN ORDER HAS ISSUED.

---

S.Ct. 873, 134 L.Ed.2d 6 (1996) (other citations omitted)).

**44.** § 23A.

**45.** *See Heron v. Heron*, 428 Mass. 537, 703 N.E.2d 712, 715 (1998) (citing *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)).

**46.** Code of Civil Procedure, R.S.Q., ch. C–25, art. 165 (Que.) (italics omitted).

**47.** Civil Code of Quebec, S.Q., ch. 64, art. 2848 (italics omitted).

**48.** *See Boucher v. Stelco Inc.*, [2005] 3 S.C.R. 279, ¶ 32.

**49.** *See supra* note 22 and accompanying text (citing *Bank Melli Iran*, 58 F.3d at 1408; *Manches & Co.*, 646 N.E.2d at 86–87).

**50.** Mot. to Dismiss Hr'g Tr. 9, Dec. 5, 2007.

**51.** Because a decision on Defendant's res judicata defense disposes of the Motion, this court does not reach Defendant's compulsory counterclaim argument or personal jurisdiction defense.

*ORDER*

For the reasons set forth in the accompanying Memorandum, this court hereby orders that:

1. Defendant's *Renewed Motion to Dismiss* [# 14], which this court has converted into a *Motion for Summary Judgment,* is ALLOWED.

IT IS SO ORDERED.