[850 NE2d 647, 817 NYS2d 600]

Sung Hwan Co., Ltd., Appellant, v Rite Aid Corporation, Respondent.

Argued April 26, 2006; decided June 6, 2006

## POINTS OF COUNSEL

*Herzfeld & Rubin, P.C.,* New York City (*David B. Hamm, Herbert Rubin, Ian Ceresney, Martin Evans, Michael Gallub* and *Linda M. Brown* of counsel), for appellant. I. The 1995 sales agreement and Korean court file, far from conclusively establishing a defense to plaintiff's claims as a matter of law, demonstrate that the Korean court properly exercised jurisdiction over Rite Aid Corporation. At a minimum, issues of fact were raised as to jurisdiction, mandating reinstatement of the complaint and the conduct of discovery proceedings. (*511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144; *LaMarca v Pak-Mor Mfg. Co.,* 95 NY2d 210; *Adams v Bodum Inc.,* 208 AD2d 450; *Kappas v T.W. Kutter, Inc.,* 192 AD2d 402; *Kernan v Kurz-Hastings, Inc.,* 175 F3d 236; *Leon v Martinez,* 84 NY2d 83; *Peterson v Spartan Indus.,* 33 NY2d 463; *CIBC Mellon Trust Co. v Mora Hotel Corp.,* 100 NY2d 215; *Napolitano v Mastic Bicycles & Fitness Co.,* 279 AD2d 461; *Federal Ins. Co. v Chevalier Mach.,* 258 AD2d 904.) II. The Korean court had more than sufficient basis to sustain its exercise of personal jurisdiction over defendant. (*Walker v Pepsico, Inc.,* 248 AD2d 1015; *LaMarca v Pak-Mor Mfg. Co.,* 95 NY2d 210; *Adams v Bodum Inc.,* 208 AD2d 450; *Darienzo v Wise Shoe Stores,* 74 AD2d 342; *Greschler v Greschler,* 51 NY2d 368; *LBS Bank-New York v Yutex, Inc.,* 283 AD2d 281; *Harris S.A. De C.V. v Grupo Sistemas Integrales De Telecomunicacion S.A. De C.V.,* 279 AD2d 263; *Aspinall's Club v Aryeh,* 86 AD2d 428; *Neporany v Kir,* 5 AD2d 438.)

*Morgan, Lewis & Bockius, LLP,* New York City and Washington, D.C. (*Peter Buscemi, John E. Failla, Joseph Brooks, Brian A. Herman* and *Joshua Pepper* of counsel), for respondent. I. Under CPLR 5304, the Korean judgment is not conclusive and cannot be recognized or enforced. (*CIBC Mellon Trust Co. v Mora Hotel Corp.,* 296 AD2d 81, 100 NY2d 215, 540 US 948; *Porisini v Petricca,* 90 AD2d 949.) II. The sales agreement and Korean court file demonstrate conclusively that under New York principles, the Korean court did not have personal jurisdic-

tion over Rite Aid Corporation. (*Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez,* 171 F3d 779; *Evans v Planned Parenthood of Broome County,* 43 AD2d 996; *Armco Inc. v North Atl. Ins. Co. Ltd.,* 68 F Supp 2d 330; *PI, Inc. v Quality Prods., Inc.,* 907 F Supp 752; *CIBC Mellon Trust Co. v Mora Hotel Corp.,* 296 AD2d 81, 100 NY2d 215, 540 US 948; *East River S. S. Corp. v Transamerica Delaval Inc.,* 476 US 858; *532 Madison Ave. Gourmet Foods v Finlandia Ctr.,* 96 NY2d 280; *Bocre Leasing Corp. v General Motors Corp. [Allison Gas Turbine Div.],* 84 NY2d 685; *New York Univ. v Continental Ins. Co.,* 87 NY2d 308; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 NY2d 382.) III. The trial court acted within its discretion in denying discovery to Sung Hwan Co. (*Peterson v Spartan Indus.,* 33 NY2d 463.)

## OPINION OF THE COURT

CIPARICK, J.

Plaintiff seeks enforcement of a foreign money judgment under CPLR article 53—recognition of foreign country money judgments—that was entered by the District Court of Seoul, Republic of Korea. Defendant argues that the Korean court was without jurisdiction, as the judgment was based on a cause of action that, although cast in terms of tort, would be considered a breach of contract claim in New York and would therefore not qualify as a basis for CPLR 302 long-arm jurisdiction. The fact that a foreign country's substantive law differs from New York law, plaintiff counters, is not a sufficient basis for the nonrecognition of its judgments, and the principles of comity warrant mutual respect of such judgments if jurisdiction is otherwise proper. We agree with plaintiff that defendant failed to demonstrate that the Korean court's exercise of jurisdiction is not entitled to comity. We therefore reinstate the complaint.

In 1995, Sangshin Trading Co., a Korean exporter/importer of dairy products, entered into a sales agreement in California to purchase large quantities of ice cream from Thrifty Payless, Inc., an ice cream manufacturer. The contract provided that Sangshin would accept delivery of the ice cream in California and that it would be resold only in Korea. The contract had an initial term of one year and automatically renewed itself annually with an opportunity for Sangshin to obtain exclusive agency status if more than 32,000 gallons of ice cream were purchased in the first year.

Plaintiff, Sung Hwan Co., is a Korean company that operates a chain of Thrifty brand ice cream stores throughout Korea.

Sung Hwan contracted with Sangshin for the purchase of Thrifty ice cream for sale in its 340 stores. Upon Sung Hwan's entering into the market, gross sales of Thrifty ice cream in Korea grew from approximately $50,000 in 1995 to over $7,000,000 in 1996. However, sales rapidly declined in late 1997 after a highly publicized discovery by the Korean government of listeria monocytogenes in Thrifty brand ice cream. Initially, the Korean government announced that it had found excessive levels of listeria in two flavors of Thrifty ice cream. However, upon additional testing, the Korean Food and Drug Administration found listeria in six flavors of Thrifty ice cream. As a result, the Korean government sent Sung Hwan notice recalling the six flavors and halting sales of all Thrifty ice cream pending further testing.

After suffering a sudden drop in business, Sung Hwan sent several letters to Thrifty seeking assistance in handling the ramifications of the listeria problem but allegedly received no response. In December 1997, Sung Hwan again sent Thrifty a letter but this time detailed its claims for compensation for loss of business as well as for losses related to the nonmarketable ice cream stock left in its warehouses. Rite Aid, which had purchased Thrifty Payless, Inc. in 1997, responded by having its general counsel meet with Sung Hwan's attorneys in San Francisco in March 1998 for settlement negotiations.[1] Rite Aid requested Korean testing details, which plaintiff provided, but no reply or offer of settlement was forthcoming.

Sung Hwan ultimately filed a complaint against Rite Aid in Seoul District Court seeking, among other things, "Liability for Damages Based Upon Torts." The complaint and a translated version were served on Rite Aid at its corporate headquarters in Harrisburg, Pennsylvania. However, Rite Aid failed to respond[2] and on February 9, 2001, a default judgment was entered in Korea on the tort claim against Rite Aid for 5.5 billion Korean won (approximately $5,000,000).

Upon entry of the judgment, Sung Hwan sought enforcement in New York under CPLR article 53. In June 2001, Sung Hwan

---

1. The parties are in dispute as to whether Thrifty is a subsidiary or division of Rite Aid. Sung Hwan asserts that Thrifty is a division of Rite Aid as indicated by the letterhead on correspondence between the parties. Rite Aid alleges that the Thrifty brand is merely a subsidiary. For purposes of this motion to dismiss, Rite Aid's status as a separate legal entity is not at issue.

2. Under article 27 (now article 30) of the Korea Civil Procedure Act, a party may make a special appearance solely for the purpose of contesting jurisdiction.

moved for summary judgment in lieu of complaint. The court denied the motion, finding unresolved issues of fact regarding the relationship between Thrifty and Rite Aid, and ordered the filing of a formal complaint. After the filing of a complaint, answer and amended complaint, Rite Aid moved for dismissal pursuant to CPLR 3211 (a) (1) and (7) and 5304 (a) (2). Supreme Court granted Rite Aid's motion and dismissed the complaint, foreclosing entry of a New York judgment based on the Korean judgment. The Appellate Division affirmed, stating that there was no cognizable basis for asserting personal jurisdiction over Rite Aid. We granted leave and now reverse.

"New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts" (*CIBC Mellon Trust Co. v Mora Hotel Corp.*, 100 NY2d 215, 221 [2003]). Historically, New York courts have accorded "recognition to the judgments rendered in a foreign country under the doctrine of comity . . . [a]bsent some showing of fraud in the procurement of the foreign country judgment or that recognition of the judgment would do violence to some strong public policy of this State" (*Greschler v Greschler*, 51 NY2d 368, 376 [1980] [citation omitted]). The public policy inquiry rarely results in refusal to enforce a judgment unless it is "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense" (*Intercontinental Hotels Corp. [Puerto Rico] v Golden*, 15 NY2d 9, 13 [1964]).

In accordance with this rationale, CPLR article 53, the Uniform Foreign Country Money-Judgments Recognition Act, was enacted in 1970 to "promote the efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement here" (*CIBC Mellon Trust Co.*, 100 NY2d at 221). CPLR 5302 states that the "article applies to any foreign country judgment which is final, conclusive and enforceable where rendered." CPLR 5303 declares that such judgments are enforceable except as provided in CPLR 5304. As relevant here, CPLR 5304 (a) (1) articulates our common-law jurisprudence that a foreign judgment is not conclusive if it "was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law," and CPLR 5304 (a) (2) states that a foreign judgment will not be recognized if the foreign court did not have personal jurisdiction over the judgment debtor. CPLR 5305, entitled "Personal jurisdiction," in turn, enumerates six bases for jurisdiction as well as a catch-

all phrase providing that "[t]he courts of this state may recognize other bases of jurisdiction" (CPLR 5305 [b]).

Thus, the inquiry turns on whether exercise of jurisdiction by the foreign court comports with New York's concept of personal jurisdiction, and if so, whether that foreign jurisdiction shares our notions of procedure and due process of law. If the above criteria are met, and enforcement of the foreign judgment is not otherwise repugnant to our notion of fairness, the foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding.

When addressing CPLR article 53, absent a finding of personal jurisdiction under CPLR 5305 (a), our courts have typically looked to the framework of CPLR 302, New York's long-arm statute, using it as a parallel to assess the propriety of the foreign court's exercise of jurisdiction over a judgment debtor (*see* CPLR 5305 [b]; *CIBC Mellon Trust Co. v Mora Hotel Corp.*, 296 AD2d 81, 96-97 [1st Dept 2002], *affd* 100 NY2d 215 [2003]; *Wimmer Can. v Abele Tractor & Equip. Co.*, 299 AD2d 47, 49-50 [3d Dept 2002]; *Porisini v Petricca*, 90 AD2d 949, 950 [4th Dept 1982]). Under CPLR 5305 (b) courts have recognized the validity of a foreign judgment using any of the jurisdictional bases New York recognizes. One such basis is CPLR 302 (a), which states:

> "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: . . .

> "3. commits a tortious act without the state causing injury to person or property within the state . . . if he

> "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

In *LaMarca v Pak-Mor Mfg. Co.* (95 NY2d 210, 214 [2000]) we identified five elements for predicating jurisdiction under CPLR 302 (a) (3) (ii):

> "First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce."

Thus, in New York, jurisdiction can be premised on commission of a tortious act "out of the state" causing injury "within the state," and the specific inquiry here is whether Korea's exercise of jurisdiction over Rite Aid was consistent with New York law. For purposes of this inquiry, Korea is "the state" referenced in CPLR 302 (a) (3) and the issue turns on whether Sung Hwan sufficiently alleged that Rite Aid committed "a tortious act" outside Korea, causing injury within Korea.

Rite Aid here contests only the first element, that a tortious act occurred. Specifically, Rite Aid argues that Sung Hwan's claim is nothing more than an allegation of breach of contract under the guise of a tort since New York does not award economic damages for a tort cause of action, and accordingly falls outside the scope of CPLR 302 (a) (3).

Sung Hwan, on the other hand, argues that Rite Aid's ice cream was defective and that Rite Aid negligently breached its duty of care to properly test the products for contaminants before placing its product—manufactured in California—into the stream of commerce, ultimately causing loss of inventory and business in Korea. The Korean court ruled in favor of Sung Hwan and found that the conduct was tortious under Korean law in that

> "[d]efendant, as a manufacturer of ice cream, has a duty of care to test and examine whether the subject ice cream includes Listeria or any other bacteria causing of food poisoning or harmful to the health, [defendant] was negligent in failing to exercise such duty by selling the goods containing Listeria to the plaintiff, and thus such negligence caused damages
> . . . ."

Rite Aid erroneously focuses on the remedy sought—damages for economic loss—in arguing that no tortious act occurred since New York does not allow recovery for economic loss based on negligence. This argument is contrary to our case law and would undermine the principles of comity by supplanting New York

substantive law in place of that of the foreign jurisdiction. As stated in *Sybron Corp. v Wetzel* (46 NY2d 197, 205 [1978]), "[CPLR 302], drafted by sophisticated experts, does not limit the kinds of tortious acts covered to personal injury, property damage, or other noncommercial torts. Under such circumstances the statute should be read with the breadth it easily carries, and the unqualified legislative enactment respected." In *Sybron*, this Court held that a tortious act committed out of state that was likely to cause injury through loss of business in state was sufficient to satisfy personal jurisdiction regardless of whether damages were ascertainable or likely recoverable (*id.* at 204-205). This is directly analogous to Sung Hwan's claims here.

Furthermore, as conceded by the parties, had plaintiff been an individual who brought suit for personal injury resulting from listeria poisoning, jurisdiction would plainly exist. We see no reason why jurisdiction should be denied merely because a plaintiff is relying on a theory of economic loss resulting from a tortious act rather than seeking compensation for personal injury resulting from that same tortious act.

For purposes of establishing long-arm jurisdiction, a tort should be broadly defined to encompass one that causes economic injury. Certainly such recovery, although not recognized in New York, is neither repugnant to our public policy nor offensive to our notions of fairness (*see Greschler*, 51 NY2d at 376). The argument that New York generally fails to recognize economic loss as a basis for damages in proceedings based on tort is immaterial (*cf. Loucks v Standard Oil Co. of N.Y.*, 224 NY 99, 110-111 [1918] ["If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home"]). To hold otherwise would undermine the fundamental principles of comity by interfering with the acts of a foreign jurisdiction's legislature or judicial body (*see Hilton v Guyot*, 159 US 113, 163-164 [1895]). Here, although Korean law appears more expansive than New York law in imposing liability for economic loss under a tort theory, we see no reason to foreclose the use of CPLR 302 (a) (3) as a basis for Korea's exercise of personal jurisdiction over Rite Aid merely because of this difference in the substantive tort law of the two jurisdictions.

Thus, we conclude that the lower courts erred in granting Rite Aid's motion to dismiss the complaint for lack of personal

jurisdiction. We need not reach the parties' remaining arguments.

Accordingly, the order of the Appellate Division should be reversed, with costs, defendant's motion to dismiss the complaint denied and the matter remitted to Supreme Court for further proceedings.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.