# United States Court of Appeals

## For the First Circuit

No. 08-2579

EVANS CABINET CORPORATION,

Plaintiff, Appellant,

v.

KITCHEN INTERNATIONAL, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Ripple,[*] Circuit Judges.

Charles K. Reed, with whom P. Michael Freed, McKenna Long & Aldridge, LLP, Alex C. Gianacoplos, and Duggan & Caccavaro, were on brief, for appellant.
Edward J. Fallman, for appellee.

February 3, 2010

---

[*] Of the Seventh Circuit, sitting by designation.

**RIPPLE, <u>Circuit Judge</u>.** Evans Cabinet Corporation ("Evans") instituted this diversity action in the United States District Court for the District of Massachusetts against Kitchen International, Inc. for breach of contract and quantum meruit.[1] Kitchen International filed a motion to dismiss based on res judicata. It claimed that the action was foreclosed because of an earlier judgment entered by the Superior Court of Québec. After a hearing on the motion to dismiss, the district court determined that the arguments went beyond the pleadings. After allowing limited discovery and converting the motion to one for summary judgment, the court entered judgment for Kitchen International. Evans filed a timely appeal to this court.[2]

For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

---

[1] The district court had diversity jurisdiction over this contract dispute pursuant to 28 U.S.C. § 1332. Evans is a Georgia corporation with its principal place of business in Dublin, Georgia. Kitchen International is a Louisiana corporation with its principal place of business in Montreal, Québec.

[2] This court has jurisdiction over the final decision of the district court pursuant to 28 U.S.C. § 1291.

# I

## BACKGROUND

According to the allegations of the complaint, Kitchen International and Evans entered into a contract in 2004.[3] Evans agreed to supply Kitchen International with manufactured cabinetry for several residential construction sites on the East Coast of the United States. Kitchen International placed these orders from its headquarters in Montreal with the Georgia offices of Evans. The materials were shipped directly to the construction sites.

According to Kitchen International, in 2004, the two parties also agreed that they would create a products showroom at Kitchen International's office in Montreal. Kitchen International claims that Paul Gatti of Evans approved the design and layout of the showroom. According to Kitchen International, later that year, Evans manufactured and shipped cabinetry, related products and sales and promotional materials to Québec for use in the showroom. Evans denies the existence of such an agreement; it claims that it never authorized Kitchen International to build a showroom and that it did not supply products to Kitchen International for that purpose.

Various issues arose about the quality and conformity of the products that Evans had shipped to the East Coast projects.

---

[3] The record does not include a copy of this contract or any information about the circumstances surrounding its formation.

Consequently, in May 2006, Kitchen International engaged a Canadian attorney to file suit against Evans in the Superior Court of Québec for breach of contract arising from the materials supplied by Evans. Evans was served with process and given notice of this proceeding. Evans did not answer or otherwise respond to the action, and, consequently, on May 31, 2007, the Superior Court of Québec entered a default judgment against Evans in the amount of $149,354.74.

On April 23, 2007, Evans instituted this action for breach of contract and quantum meruit in the United States District Court for the District of Massachusetts. Kitchen International filed a motion to dismiss on the ground that the action was barred by res judicata by virtue of the Canadian judgment against Evans. Evans opposed the motion on the ground that the Superior Court of Québec had lacked jurisdiction over it, and, therefore, the Québec judgment could not be recognized by the district court.

During a hearing on Kitchen International's motion to dismiss, the district court realized that the issues being argued went beyond the pleadings. It therefore stated that the motion should be converted to one for summary judgment and allowed the parties ninety days to conduct limited discovery on the issue of the Superior Court of Québec's jurisdiction over Evans. On March 4, 2008, the district court resumed the hearing. The only additional documents supplied by either party were affidavits from

-4-

their principals. On November 4, 2008, the district court converted Kitchen International's motion to a motion for summary judgment and dismissed the case. The court first determined that, because it was sitting in diversity, it should apply Massachusetts's version of the Uniform Foreign Money-Judgments Recognition Act ("Recognition Act") to determine whether it should enforce the Québec judgment.[4] In order to enforce a judgment under the Recognition Act, the court continued, the Québec court must have been able to exercise personal jurisdiction over Evans.

At the beginning of its analysis, the district court observed that "jurisdictions have split over whether to apply the personal jurisdiction law of the rendering country, the forum state, or both." Evans Cabinet Corp. v. Kitchen Int'l, Inc., 584 F. Supp. 2d 410, 414 (D. Mass. 2008). Because the Supreme Judicial Court of Massachusetts had not chosen between these views, the district court decided that it would scrutinize the jurisdiction of the Québec court under both the law of Québec and the law of Massachusetts. Turning first to the law of Québec, the district court noted that Kitchen International had attached the affidavit of its Canadian attorney to establish that Québec's exercise of jurisdiction was appropriate. The district court determined that the affidavit clearly established that Kitchen International had

---

[4] Massachusetts's version of the Recognition Act is codified at Massachusetts General Laws chapter 235, § 23A. The statute is reprinted in the attached appendix.

the right to institute a lawsuit in Québec. However, it found the affidavit deficient on the issue of "whether the Quebec Superior Court properly exercised personal jurisdiction over [Evans] pursuant to article 3136 of the Civil Code of Quebec." Id. at 415. It noted, however, that the United States District Court for the Southern District of New York had determined that the Québec court could exercise personal jurisdiction over a defendant if the contract at issue had been "'concluded in Quebec or if the cause of action arose in Quebec.'" Id. (quoting Canadian Imperial Bank of Commerce v. Saxony Carpet Co., 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995) (emphasis in original)). Based on that authority, the district court concluded that the Superior Court of Québec properly had exercised personal jurisdiction over Evans pursuant to the law of Québec.

The district court then turned to the law of Massachusetts. The court first noted that Massachusetts courts had interpreted the Commonwealth's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Id. (internal quotation marks omitted). The district court then held:

> The Quebec Superior Court's exercise of personal jurisdiction over Plaintiff did not contravene traditional notions of fair play and substantial justice. Plaintiff had several contacts with Quebec. All the orders, communications, payments, correspondence and dealings between [the] Parties occurred through Defendant's Montreal office.

> Moreover, Parties agreed to create a product showroom at Defendant's Montreal office, which was ultimately constructed. The purpose of this showroom was to display Plaintiff's products to potential customers and sales agents from Canada and New England. Because under either Quebec or Massachusetts law the Quebec Superior Court properly exercised personal jurisdiction over Plaintiff, Plaintiff's argument that the Quebec default judgment is not conclusive fails.

Id. at 416 (internal quotation marks omitted).

The court then turned to the question of whether Evans's claims were barred by the Québec judgment. The district court determined that, although Massachusetts supplies the applicable res judicata law, "a Massachusetts court must give a prior judgment the same finality it would receive in the rendering jurisdiction." Id. at 417. Consequently, the court employed Québec rules of res judicata to determine whether the default judgment should be given preclusive effect. Id. (citing Québec civil code and a Supreme Court of Canada decision). The court then concluded that Evans's suit was barred by these rules:

> Here, the Quebec default judgment precludes the relitigation of Plaintiff's claim. Because a default judgment is a final judgment under the Recognition Act, the Quebec default judgment qualifies for res judicata treatment. First, this action involves the same cause of action--breach of contract--as the Quebec proceeding. Second, as both Parties stipulated in open court, this action involves the same construction projects as were at issue in the Quebec proceeding. Third, the parties to this action were the same parties to the Quebec proceeding, with

-7-

> the only difference being that Plaintiff here
> was the defendant in Quebec.

Id. The district court, therefore, held that res judicata precluded the present action and entered summary judgment for Kitchen International.

<strong>II</strong>

<strong>DISCUSSION</strong>

**A. Contentions of the Parties**

Evans submits that the district court erred in holding that its claim for damages for breach of contract or in quantum meruit were barred because of the prior default judgment entered against it by the Superior Court of Québec. In Evans's view, the Superior Court of Québec lacked personal jurisdiction over it, and, consequently, the default judgment was unenforceable and not subject to recognition by the district court. Noting that the district court applied a summary judgment standard in determining whether the Québec court properly exercised jurisdiction, Evans submits that there are significant unresolved factual questions concerning the nature of Evans's relevant contacts with the Province of Québec. Evans contends that, if the district court had taken the facts in the light most favorable to its position, as the district court must do in the context of summary judgment, there would be no basis for concluding that the Québec court could exercise personal jurisdiction over it.

Kitchen International takes a decidedly different view. It submits that the Québec judgment must be recognized and precludes the present suit. Focusing on the summary judgment motion, it notes that the district court characterized its evidence that Evans had purposeful contacts with Québec as "overwhelming." See Evans Cabinet, 584 F. Supp. 2d at 416. By contrast, Evans submitted only the affidavits of Mark Trexler, Evans's CEO, who, in Kitchen International's view, could show no involvement in the parties' agreements.

## B. Threshold Matters

We review de novo a grant of summary judgment. Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In assessing the merits of such a motion, the court must consider the record in the light most favorable to the party opposing the motion and must indulge in all inferences favorable to that party. Kunelius v. Town of Stow, 588 F.3d 1, 8-9 (1st Cir. 2009). We also must keep in mind, however, that the role of summary judgment is to "pierce the pleadings" and to determine whether there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The moving party must "put the ball in play" by averring the absence of any genuine issue of fact. Id. at 48. Once the ball is in play, however, the non-moving party must come forward with competent evidence to rebut

the assertion of the moving party.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Not every factual discrepancy is sufficient to defeat a motion for summary judgment. "[E]vidence that 'is merely colorable or is not significantly probative'" cannot defeat the motion.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).[5]

When sitting in diversity and asked to recognize and enforce a foreign country judgment, federal courts tend to apply

---

[5]  Evans notes that, in determining the jurisdiction of the Québec court, the district court did not employ any of the methodologies set out in Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-78 (1st Cir. 1992).  See also Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144-49 (1st Cir. 1995).  We agree with Evans that the district court correctly proceeded in this regard.  The approaches set forth in Foster-Miller and in Boit are designed to assist the district court in investigating the basis of its own jurisdiction in the suit before it.  They are designed to reconcile the sometimes competing interests of fairness to the parties and considerations of judicial economy that often arise in that context.

Here, the jurisdictional issue is raised in a very different context.  Kitchen International's motion to dismiss the Massachusetts action did not attempt simply to bar the prosecution of the current action in Massachusetts on the ground that the district court lacked authority to adjudicate Evans's present contract claim there.  Rather, it was a motion addressed to the merits of the Massachusetts action.  It sought a ruling that Evans was precluded from obtaining the substantive relief that it sought in the Massachusetts action because an earlier judgment obtained in another court precluded any further litigation of the matter.  As part of that assertion, Kitchen International submits that the earlier judgment was rendered by a court that had personal jurisdiction over the defendant in that action, Evans.  Evans takes the opposite view.  This is a merits dispute properly analyzed at this stage of the proceedings by conventional summary judgment analysis.

the law of recognition and enforcement of the state in which they sit, as required by <u>Erie Railroad Co.</u> v. <u>Tompkins</u>, 304 U.S. 64 (1938).[6] However, some courts and commentators have suggested that recognition and enforcement of foreign country judgments deserves application of a uniform federal body of law because suits of this nature necessarily implicate the foreign relations of the United States.[7] This question has not been decided definitively in this

---

[6] <u>See</u>, <u>e.g.</u>, <u>Sarl Louis Feraud Int'l</u> v. <u>Viewfinder, Inc.</u>, 489 F.3d 474, 477-78 (2d Cir. 2007); <u>Soc'y of Lloyd's</u> v. <u>Siemon-Netto</u>, 457 F.3d 94, 98-99 (D.C. Cir. 2006); <u>Sw. Livestock & Trucking Co.</u> v. <u>Ramon</u>, 169 F.3d 317, 320 (5th Cir. 1999); <u>Phillips USA, Inc.</u> v. <u>Allflex USA, Inc.</u>, 77 F.3d 354, 359 (10th Cir. 1996); <u>Andes</u> v. <u>Versant Corp.</u>, 878 F.2d 147, 149-50 (4th Cir. 1989); <u>Ingersoll Milling Mach. Co.</u> v. <u>Granger</u>, 833 F.2d 680, 686 (7th Cir. 1987); <u>Bank of Montreal</u> v. <u>Kough</u>, 612 F.2d 467, 469-72 (9th Cir. 1980); <u>Somportex Ltd.</u> v. <u>Philadelphia Chewing Gum Corp.</u>, 453 F.2d 435, 440 (3d Cir. 1971); <u>see also</u> <u>McCord</u> v. <u>Jet Spray Int'l Corp.</u>, 874 F. Supp. 436, 437-38 (D. Mass. 1994); Restatement (Second) of Conflict of Laws § 98 & cmt. c (rev. 1988).

[7] <u>See</u>, <u>e.g.</u>, <u>Wilson</u> v. <u>Marchington</u>, 127 F.3d 805, 813 (9th Cir. 1997) ("We apply federal common law when a federal rule of decision is necessary to protect uniquely federal interests." (internal quotation marks omitted)); <u>Banque Libanaise Pour Le Commerce</u> v. <u>Khreich</u>, 915 F.2d 1000, 1003 n.1 (5th Cir. 1990) ("Commentators have argued that the enforceability of a foreign judgment in United States' courts should [] be governed by reference to a general rule of federal law."); <u>Tahan</u> v. <u>Hodgson</u>, 662 F.2d 862, 868 (D.C. Cir. 1981) ("[N]otwithstanding <u>Erie Railroad Co.</u> v. <u>Tompkins</u>, the issue seems to be national rather than state."); <u>see also</u> Restatement (Second) of Conflict of Laws § 98 cmt. c ("[I]t seems probable that federal law would be applied to prevent application of a State rule on the recognition of foreign nation judgments if such application would result in the disruption or embarrassment of the foreign relations of the United States." (citing <u>Zschernig</u> v. <u>Miller</u>, 389 U.S. 429 (1968))); Ronald A. Brand, <u>Enforcement of Foreign Money-Judgments in the United States: In Search of Uniformity and International Acceptance</u>, 67 Notre Dame L. Rev. 253, 301-18 (1991) (suggesting that federal common law may supplant state laws on the recognition and

circuit.  In John Sanderson (Wool) Pty. Ltd. v. Ludlow Jute Co.,

569 F.2d 696, 697 n.1 (1st Cir. 1978), we left the question open,

noting that there was no reason to decide the matter under the

facts of that case because there was no appreciable difference

between the federal and the state rules.  We shall follow the same

course in this case because we need not resolve the matter here.

Neither party has suggested that the district court ought to have

followed a rule other than that of Massachusetts.  In any event,

even if the reciprocity rule of Hilton v. Guyot were applicable

under the facts of this case, the Massachusetts rule of recognition

_____

enforcement of foreign country judgments).

     Proponents of this view note that a federal rule of recognition and enforcement of foreign country judgments may already exist, as established by the Supreme Court in Hilton v. Guyot, 159 U.S. 113 (1895).  When a federal court is asked to recognize and enforce a foreign country judgment in an action where the court's subject matter jurisdiction is based not on diversity, but on 28 U.S.C. § 1331 or some other source of federal jurisdiction, the federal rule of recognition and enforcement would govern.  See, e.g., Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995) (applying the federal rule in a Lanham Act case).  See generally Brand, supra, at 262 n.32 (discussing non-diversity cases applying federal rules).

     According to Hilton, a diversity case from the pre-Erie era, foreign judgments shall be recognized so long as the rendering court afforded an opportunity for full and fair proceedings; the court was of competent jurisdiction over the persons and subject matter; the court conducted regular proceedings, which afforded due notice of appearance to adversary parties; and the court afforded a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries.  See 159 U.S. at 202-03.  The Hilton rule also requires reciprocity in the recognition and enforcement of United States judgments from the jurisdiction of the rendering court.  Id. at 210, 226-27.

and enforcement also contains a reciprocity requirement.  See Mass. Gen. Laws ch. 235, § 235A (subsection (7) of third paragraph); see also John Sanderson, 569 F.2d at 697.

## C. Massachusetts Law on the Recognition of Foreign Country Judgments

With respect to the recognition of foreign country judgments, Massachusetts, like many other states of the Union, has enacted a version of the Recognition Act.[8]  The Massachusetts version of that Act is codified at Massachusetts General Laws chapter 235 § 23A.[9]  This section clearly requires that the rendering court have personal jurisdiction over the defendant in order for the resulting judgment to be recognized in Massachusetts.

---

[8]  The parties do not question that the Recognition Act applies not only to enforcement actions but also to the recognition of the foreign judgments to preclude further litigation.  See 18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4473 n.7 ("The inclusion of at least the core of claim preclusion in Section 3 [of the Recognition Act] is noted [by commentators].");  see also Brand, supra, at 265-66 & n.43 ("'Whether a foreign judgment should be recognized, may be in issue, however, not only in enforcement . . . but in other contexts, for example where the defendant seeks to rely on a prior adjudication of a controversy (res judicata).'" (quoting Restatement (Third) of Foreign Relations Law § 481 cmt. b (1986))).  Of course, in the case of recognition to preclude further litigation, once the foreign judgment is deemed entitled to recognition under the Recognition Act, the extent of the foreign judgment's preclusive effect still must be determined.  See generally Restatement (Second) of Conflicts of Laws § 98 cmt. g (rev. 1988).  In this case, we need not address that issue because Evans has waived any argument that the Québec judgment is entitled to less res judicata effect than what the district court gave it.  See infra note 18.

[9]  See the statutory appendix to this opinion.

-13-

The statute does not state explicitly, however, whether the correctness of that exercise of jurisdiction by the rendering court ought to be determined according to the law of the rendering or the enforcing jurisdiction. The district court suggested that there is currently a division of authority on this question among the states that have enacted a form of the Recognition Act.[10] The district

---

[10] Some states have concluded that the relevant question is only whether personal jurisdiction would have been present had the rendering court applied the law of the enforcing state. See, e.g., Genujo Lok Beteiligungs GmbH v. Zorn, 943 A.2d 573, 580 (Me. 2008) (looking only to whether the foreign jurisdiction could have established personal jurisdiction under Maine law); Sung Hwan Co. v. Rite Aid Corp., 850 N.E.2d 647, 650-51 (N.Y. 2006) (interpreting the term "personal jurisdiction" as used in an analogous New York statute to mean "whether exercise of jurisdiction by the foreign court comports with New York's concept of personal jurisdiction" and omitting any analysis of foreign law).

Other state courts instead have concluded that the proper interpretation is to ascertain first whether the rendering court could exercise personal jurisdiction over the defendant under its own laws. They then look to whether the rendering court could have exercised personal jurisdiction under the law of the forum state. The purpose of this second step is to ensure that the rendering court not only possessed jurisdiction at the time of judgment but also that the rendering court's procedures comported with United States due process standards. Under this approach, both of these requirements are necessary for a rendering court to have personal jurisdiction over the defendant within the meaning of the Recognition Act. See, e.g., Monks Own, Ltd. v. Monastery of Christ in the Desert, 168 P.3d 121, 124-27 (N.M. 2007) (adopting the approach of first ascertaining whether personal jurisdiction was satisfied under the law of the rendering foreign jurisdiction and then determining whether the judgment debtor's applicable contacts with the rendering jurisdiction satisfy the United States constitutional due process minimum); Vrozos v. Sarantopoulos, 552 N.E.2d 1093, 1099-1100 (Ill. App. Ct. 1990) (reviewing a trial court decision concluding that a Canadian court had personal jurisdiction over the judgment debtor pursuant to United States principles of due process and remanding for consideration of whether the Canadian court also had personal jurisdiction pursuant to Canadian law of service of summons). Federal courts applying

-14-

court also noted that the Supreme Judicial Court of Massachusetts has not yet spoken squarely on the matter.[11]

The district court, faced with the ambiguity about the prevailing rule in Massachusetts with respect to the law governing personal jurisdiction in the rendering court, explicitly declined to resolve the matter and instead applied the governing rule of both jurisdictions.  On appeal, neither party has contended that the district court erred in this regard.  Nor has either party argued that Massachusetts would apply any other rule.  Under these circumstances, we must conclude that the parties have waived any reliance on another rule and that we must decide this case by assessing the facts in light of the personal jurisdiction law of both the Province of Québec and the Commonwealth of Massachusetts.

---

analogous state recognition acts also have adopted this approach. See K & R Robinson Enters. Ltd. v. Asian Exp. Material Supply Co., 178 F.R.D. 332, 339-42 (D. Mass. 1998).  See generally Royal Bank of Canada v. Trentham Corp., 491 F. Supp. 404, 408-10 (S.D. Tex. 1980), vacated by, 665 F.2d 515 (5th Cir. 1981).  The American Law Institute adopts this approach in its model federal statute on the recognition of foreign money judgments.  See American Law Institute, Recognition and Enforcement of Foreign Judgments: Analysis and Proposed Federal Statute § 3 & cmt. c (2006).

[11] In Manches & Co. v. Gilbey, 646 N.E.2d 86 (Mass. 1995), the Supreme Judicial Court decided that an English default judgment was worthy of recognition in Massachusetts.  It reviewed the English judgment employing the criteria stated in the Massachusetts version of the Recognition Act.  However the court did not rule on the question of whether the actual exercise of jurisdiction by the English court ought to be measured solely by the law of England or Massachusetts or both.

**1. The Jurisdiction of the Superior Court of Québec under the Law of Québec**

We turn, then, to the question of whether Kitchen International established that the Superior Court of Québec properly exercised personal jurisdiction over Evans.[12]  In the district court, Kitchen International submitted the affidavit of a Canadian attorney and argued that the Québec court properly exercised jurisdiction under Article 3136 of the Québec Civil Code. That provision states:

> Even though a Québec authority has no jurisdiction to hear a dispute, it may hear it, if the dispute has a sufficient connection with Québec, where proceedings cannot possibly be instituted outside Québec or where the institution of such proceedings outside Québec cannot reasonably be required.

Civil Code of Québec, R.S.Q., ch. 64, art. 3136.  From an examination of the record in its entirety, it does not appear that Kitchen International relied upon any other particular provision of the Code.  Moreover, the opinion of the district court appears to have interpreted Kitchen International's position as relying entirely on this provision.  The district court took the view, albeit in conclusory fashion, that this provision applied because "'the contract [at issue] was concluded in Quebec <u>or</u> [] the cause of action arose in Quebec.'"  <u>Evans Cabinet</u>, 584 F. Supp. 2d at 415

---

[12]  The Superior Court of Québec is the court of general trial jurisdiction in the Province of Québec.  <u>See</u> F. Pearl Eliadis & France Allard, <u>The Legal System in Quebec</u>, <u>in</u> Gerald Gall, <u>The Canadian Legal System</u> 277 (5th ed. 2004).

-16-

(quoting Canadian Imperial Bank, 899 F. Supp. at 1253 (emphasis and first alteration in original)).

There are two problems with this analysis. First, the Québec provision relied upon by Kitchen International, Article 3136, is clearly a provision that permits Québec courts to assume personal jurisdiction over parties in exceptional cases when there is no other available jurisdiction to which the parties may litigate their dispute. See GreCon Dimter, Inc. v. J.R. Normand, Inc., [2005] 2 S.C.R. 401 para 33.[13] Such a situation is clearly not the case here. The litigants are American corporations which are amenable to suit in the state of their corporate domicile and, with respect to particular transactions, in the states where they have the requisite minimum contacts with the other party and with the transaction at issue in the lawsuit. Because there obviously are other forums quite able to assume jurisdiction over the parties, we must conclude that Kitchen International has not carried its burden of establishing that this provision can serve as an adequate basis for jurisdiction over Evans in the courts of that province. Cf. Bouchard v. Ventes de Vehicules Mitsubishi du Canada Inc., [2008] Q.J. No. 13487, 2008 QCCS 6033 para. 22 (holding that the statute does not apply because "all Respondents are domiciled in countries with sophisticated court systems which apply the rule

---

[13] Other provisions of the code, however, would have been invoked more appropriately. See the statutory appendix to this opinion.

-17-

of law"). The second infirmity with the district court's reliance on Article 3136 is that Canadian Imperial Bank does not indicate that the parties in that case, or the district court in that case, were relying on this provision of Québec law. Nor does Canadian Imperial Bank identify what provision of Québec law the court believed supported an exercise of personal jurisdiction in that case. 899 F. Supp. at 1253. Thus, simply invoking Canadian Imperial Bank does not prove that the Superior Court of Québec properly exercised personal jurisdiction over Evans pursuant to Québec law.

Under these circumstances, we normally would have little difficulty in concluding that Kitchen International had not met its burden of establishing that the Québec court had personal jurisdiction over Evans on the basis of Article 3136 and, moreover, that Kitchen International had waived reliance on any other provision of Québec law by its failure to raise any other provision in the district court. However, several considerations make a determination of waiver inappropriate under the circumstances of this case. First, although relying on the wrong section of the Code, the district court indicated to the parties that it believed Québec's Code authorized jurisdiction if the contract had been made in Québec or if the cause of action had arisen there. Additionally, Evans, far from relying on a waiver on the part of Kitchen International, explicitly admits in its brief before this

court that the Québec court could have had jurisdiction if the contract had been concluded in Québec or if the cause of action arose in Québec. Appellant's Br. 16 (citing Canadian Imperial Bank).[14] Under these circumstances, we must conclude that Kitchen International may be able to demonstrate that the Québec court was authorized to exercise jurisdiction if it can demonstrate that a contractual relationship was established with Evans in Québec or that there was a breach of that agreement in Québec or that one of the obligations arising from the contract was to be performed in the Province. A provision of the Civil Code of Québec authorizes the exercise of jurisdiction on these bases. See Civil Code of Québec, R.S.Q., ch. 64, art. 3148.[15] Under that provision, a Québec court can exercise personal jurisdiction over a foreign defendant if, inter alia, "a fault was committed in Québec, damage was suffered in Québec, an injurious act occurred in Québec or one of the obligations arising from a contract was to be performed in Québec." Id.

Relying on the affidavit of Ms. Shiell, an officer and owner of Kitchen International, the district court took the view that the authority of Québec to exercise jurisdiction over Evans

---

[14] Read in context, it is clear that Evans makes this statement in reference to the district court's reading of Article 3136. However, there is no indication that Evans disagrees with that reading or that it believes that Article 3136 is limited to the extraordinary circumstance when there is no other viable forum.

[15] See the statutory appendix to this opinion.

had been established because all of the "'orders, communications, payments, correspondence and dealings'" between the parties had taken place through Kitchen International's Montreal office. Evans Cabinet, 584 F. Supp. 2d at 416 (quoting Shiell Aff. at 3). The district court also concluded that the parties had agreed to create a product showroom to display Evans's products to potential customers and sales agents from New England and Canada. Id.

An examination of the record makes clear, however, that the district court's factual conclusions were not undisputed. Through the affidavit and supplemental affidavit of its CEO, Mark Trexler, Evans disputed that it had accepted in Québec any contractual obligation with Kitchen International or had engaged, through its representatives, in any business in Québec. Indeed, it denied the existence of any agreement with Kitchen International other than various agreements to sell the allegedly defective material. Evans denied, explicitly, any joint venture to establish a showroom in Montreal. Indeed, none of the affidavits make explicit the precise relationship between the alleged showroom and the specific sales of allegedly defective products by Evans. Under these circumstances, it is clear that genuine issues of fact remain to be resolved before the authority of Québec to exercise personal jurisdiction over Evans can be established.

## 2. The Application of Massachusetts Standards to the Superior Court of Québec's Exercise of Jurisdiction

At the outset, we pause to emphasize that the parties do not dispute that the district court had personal jurisdiction over them in this case. Here we review its determination of whether the exercise of personal jurisdiction by the Superior Court of Québec comported with Massachusetts and federal standards.

The exercise of personal jurisdiction over a defendant such as Evans is governed by the Commonwealth's long-arm statute insofar as the exercise of jurisdiction also comports with the requirements of the federal Due Process Clause. <u>Caplan</u> v. <u>Donovan</u>, 879 N.E.2d 117, 120 (Mass. 2008); <u>see also</u> <u>Ticketmaster-New York, Inc.</u> v. <u>Alioto</u>, 26 F.3d 201, 204 (1st Cir. 1994). The Massachusetts long-arm statute permits the exercise of personal jurisdiction when a person has transacted business within the Commonwealth or when the person has contracted to supply services or things within the Commonwealth. This conferral of jurisdiction creates a specifically affiliating jurisdictional nexus;[16] the personal jurisdiction conferred is only with respect to litigation <u>arising out of</u> the transaction within the Commonwealth, not with respect to the defendant's transactions that did not take place in

---

[16] The district court understood Kitchen International to be arguing that Evans had a specifically affiliating nexus with Québec. <u>Evans Cabinet</u>, 584 F. Supp. 2d at 415. Kitchen International does not dispute that understanding on appeal, and, indeed, argues the case on that basis. Appellee's Br. 13.

-21-

the Commonwealth.  Here, "[w]e may sidestep the statutory inquiry and proceed directly to the constitutional analysis . . . because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d 42, 52 (1st Cir. 2002) (internal quotation marks omitted).

We have described in earlier cases these constitutional requirements:

> "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable."

Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995) (quoting United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).  With respect to the "Gestalt factors," we have observed that,

> In constitutional terms, the jurisdictional inquiry is not a mechanical exercise.  The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis.  This means that, even where purposefully generated contacts exist, courts must consider a panoply

-22-

of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal.

Ticketmaster-New York, 26 F.3d at 209 (internal quotation marks and citations omitted). The Gestalt factors that a court will consider include: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id.

In applying these standards, the district court held:

> The Quebec Superior Court's exercise of personal jurisdiction over Plaintiff did not contravene traditional notions of fair play and substantial justice. Plaintiff had several contacts with Quebec. All the orders, communications, payments, correspondence and dealings between Parties occurred through Defendant's Montreal office. Moreover, Parties agreed to create a product showroom at Defendant's Montreal office, which was ultimately constructed. The purpose of this showroom was to display Plaintiff's products to potential customers and sales agents from Canada and New England.

Evans Cabinet, 584 F. Supp. 2d at 416 (internal quotation marks omitted). However, as we have noted in our earlier discussion of the Québec jurisdictional statute, the affidavits supplied by the parties were in conflict. Evans, through the affidavits of Mr. Trexler, maintains that there were various contracts for the purchase of the allegedly defective material, that they were all

-23-

entered into by Evans at its Georgia plant and that Evans did no business in Québec. It further claims that it had no agreement with Kitchen International with respect to a showroom in Montreal and therefore, at least implicitly, denies any connection between such a showroom and its contracts to supply the allegedly defective goods. Mark Trexler further stated in his affidavit that, in his position as CEO of Evans, he had personal knowledge of Evans's contractual relationships and that he was unaware of any agreement with Kitchen International to develop or construct a showroom. Janet Shiell, one of the principals of Kitchen International, by contrast, stated in her affidavit that there was an agreement with Evans to create a showroom, and she produced paperwork purportedly related to that agreement (but no document embodying the agreement itself). Furthermore, she stated in a rebuttal affidavit that there was no reason for Trexler to know about the agreement because she (and others at Kitchen International) had dealings only with Gatti,[17] another employee of Evans. Kitchen International never makes clear the exact relationship between the alleged joint venture to create a showroom and the agreements to sell the allegedly defective material.[18]

---

[17] Who Paul Gatti is, and what his position is/was at Evans, never was explained by either party in their submissions.

[18] If the district court were to find that there was no connection between the alleged agreement to establish a showroom in Montreal and the agreements to supply the allegedly defective material, Kitchen International's argument for maintaining that the

Furthermore, even if such an argument had been made successfully,[19] the district court's analysis of jurisdiction still

_____

Québec court had jurisdiction over the contracts to supply the allegedly defective material would be weakened substantially. See Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997) (discussing application of the "arising from" clause in the Commonwealth's long-arm statute).

[19] Absent the "showroom evidence," Evans's contacts with Canada are limited to its contractual relationship with Kitchen International for the supply of cabinetry to various business sites in the United States. In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the Court explained the "purposeful availment" requirement as it applies to a contractual relationship. It stated:

This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion

-25-

is deficient.  Absent from the district court's analysis is any discussion of the "Gestalt factors," which, we have made clear, a court must consider to determine the fairness of subjecting the defendant to a foreign jurisdiction.

---

that an absence of physical contacts can defeat personal jurisdiction there.

Id. at 475-76 (internal quotation marks, citations and emphasis omitted).

In Burger King, although the defendant had no physical ties to the state of Florida, the Court determined nonetheless that he had established the necessary minimum contacts with that state to be hauled into court there.  It noted that, in determining that there was a want of jurisdiction, the appellate court had "overlook[ed] substantial record evidence indicating that Rudzewicz most certainly knew that he was affiliating himself with an enterprise based primarily in Florida."  Id. at 480.  It stated:

The contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami.  Moreover, the parties' actual course of dealing repeatedly confirmed that decisionmaking authority was vested in the Miami headquarters and that the district office served largely as an intermediate link between the headquarters and the franchisees.  When problems arose over building design, site-development fees, rent computation, and the defaulted payments, Rudzewicz and MacShara learned that the Michigan office was powerless to resolve their disputes and could only channel their communications to Miami. Throughout these disputes, the Miami headquarters and the Michigan franchisees carried on a continuous course of direct communications by mail and by telephone, and it was the Miami headquarters that made the key negotiating decisions out of which the instant litigation arose.

Id. at 480-81 (internal citations omitted).

-26-

Because the district court resolved material issues of fact against Evans, the nonmoving party, the judgment must be reversed. The controverted issues of fact that Evans has raised must be resolved. Accordingly, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.[20]

**REVERSED and REMANDED**

---

[20] Evans did not argue, until the reply brief, that, even if the district court correctly had analyzed the jurisdictional issue, it nevertheless erred in holding that its (Evans's) claims were barred by res judicata because the claim before the district court is different from the claim or cause of action before the Québec court. Because this argument was not raised in its opening brief, it is waived. Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) ("[B]ecause the argument was not made to the district court or in appellant's opening brief, surfacing only in his reply brief, it has been waived.").

**Statutory Appendix**

**Massachusetts General Laws Chapter 235, § 23A**

Except as hereinafter provided, any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.

A foreign judgment shall not be conclusive if (1) it was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have jurisdiction over the subject matter.

A foreign judgment shall not be recognized if (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or (7) judgments of this state are not recognized in the courts of the foreign state.

A foreign judgment shall not be refused recognition for lack of personal jurisdiction if (1) the defendant was served personally in the foreign state; (2) the defendant

voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him; (3) the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved; (4) the defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate had its principal place of business, was incorporated, or had otherwise acquired corporate status, in the foreign state; (5) the defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state; or (6) the defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of such operation.

The courts of this state may recognize other bases of jurisdiction.

If the defendant satisfies the court either that an appeal is pending or that he is entitled and intends to appeal from the foreign judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal.

This section shall not prevent the recognition of a foreign judgment in situations not covered by this section and its provisions.

As used in this section (1) "foreign state" means any governmental unit other than the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands; (2) "foreign judgment" means any judgment of a foreign state granting or

denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters.

**Civil Code of Québec, R.S.Q., ch. 64, art. 3148**

In personal actions of a patrimonial nature, a Québec authority has jurisdiction where

**(1)** the defendant has his domicile or his residence in Québec;

**(2)** the defendant is a legal person, is not domiciled in Québec but has an establishment in Québec, and the dispute relates to its activities in Québec;

**(3)** a fault was committed in Québec, damage was suffered in Québec, an injurious act occurred in Québec or one of the obligations arising from a contract was to be performed in Québec;

**(4)** the parties have by agreement submitted to it all existing or future disputes between themselves arising out of a specified legal relationship;

**(5)** the defendant submits to its jurisdiction.

However, a Québec authority has no jurisdiction where the parties, by agreement, have chosen to submit all existing or future disputes between themselves relating to a specified legal relationship to a foreign authority or to an arbitrator, unless the defendant submits to the jurisdiction of the Québec authority.